Jonathan C. McDonald
McDonald Law Office, PLLC
P.O. Box 1570
Helena, MT 59624
jm@mcdonaldlawmt.com
ph. (406) 442-1493

Ilana H. Eisenstein, admitted *pro hac vice*
DLA Piper LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
ilana.eisenstein@us.dlapiper.com
ph. (215) 656-3300

Peter Karanjia, admitted *pro hac vice*
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
peter.karanjia@dlapiper.com
ph. (202) 799-4000

Attorneys for *Amici Curiae* NetChoice, LLC and Chamber of Progress

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, *et al.*,<br><br>    *Plaintiffs*,<br><br>TIKTOK INC.,<br><br>    *Consolidated Plaintiff*,<br><br>v.<br><br>AUSTIN KNUDSEN, *in his official capacity as Attorney General of the State of Montana*,<br><br>    *Defendant*. | Lead Case No.<br>CV 23-56-M-DWM<br><br>Member Case No.<br>CV 23-61-M-DWM<br><br>**BRIEF OF *AMICI CURIAE* NETCHOICE, LLC AND CHAMBER OF PROGRESS** |

# TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE* ................................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................2

ARGUMENT ....................................................................................................4

I.  Montana's Statewide Ban Will Fragment the Internet and Violate Well-Established Principles of Federalism Embodied in the U.S. Constitution....................................................................................4

A.  The Statewide Ban Would Foster a Patchwork of State-Level Internet Regulation ................................................................4

B.  Montana's Ban Violates Core Principles of Federalism......................7

II.  The Ban Will Harm Montana's Local Businesses .........................................10

III.  The Ban Will Chill Innovation and Political Advocacy and Disconnect Montanans from the Global Community......................................................13

CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ............................................................7

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003) ....................................................................7

*Farina v. Nokia, Inc.*,
625 F.3d 97 (3d Cir. 2010) ....................................................................7

*Movsesian v. Victoria Versicherung AG*,
670 F.3d 1067 (9th Cir. 2012) (en banc) ..............................................8

*Nat'l Foreign Trade Council v. Natsios*,
181 F.3d 38 (1st Cir. 1999) ...................................................................8

*NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092 (W.D. Tex. 2021),
*rev'd by* 49 F.4th 439 (5th Cir. 2022), *cert. pending*, No. 22-555
(Dec. 15, 2022) ..................................................................................1, 6

*NetChoice, LLC v. Moody*, 546 F. Supp. 3d 1082 (N.D. Fla. 2021),
*vacated in part by NetChoice, LLC v. Att'y Gen. Fla.*, 34 F.4th
1196, 1203 (11th Cir. 2022), *cert. pending*, No. 22-277 (Sept. 21,
2022) ......................................................................................................1

*NetChoice, LLC v. Att'y Gen. Fla.*, 34 F.4th 1196 (11th Cir. 2022),
*cert. pending*, No. 22-277 (Sept. 21, 2022) ......................................5, 6

*NetChoice, LLC v. Griffin*, No. 23-05105 (W.D. Ar. July 7, 2023),
Dkt. No. 17................................................................................................6

*NetChoice, LLC v. Bonta*, No. 22-08861 (N.D. Cal. Feb. 17, 2023),
Dkt. No. 29................................................................................................6

*Perpich v. Dept. of Def.*,
496 U.S. 334 (1990)................................................................................8

*S. Pac. Co. v. State of Ariz. ex rel. Sullivan*,
325 U.S. 761 (1945)..............................................................................7

**Statutes**

Cal. Civ. Code § 1798.99.31 ...................................................................5

**Other Authorities**

Abby Ohlheiser, *The beauty of TikTok's secret, surprising, and eerily
accurate recommendation algorithms*, MIT Technology Review
(Feb. 24, 2021), https://www.technologyreview.com/
2021/02/24/1017814/tiktok-algorithm-famous-social-media/. ...................10, 14

Beina Xu and Eleanor Albert, *Media Censorship in China* (Feb. 17,
2017, 7:00 a.m.), https://www.cfr.org/backgrounder/media-
censorship-china .........................................................................................3

Cari Olson, *Gov. Must protect Montana small businesses by vetoing
TikTok ban*, Billings Gazette (May 10, 2023), https://billings
gazette.com/opinion/columnists/cari-olson-gov-must-protect-
montana-small-businesses-by-vetoing-tiktok-ban/article_fd8ec5d4-
ee96-11ed-97df-8fd68261daa8.html. ..............................................11

*China suspends social media accounts of Covid policy critics* (Jan. 7,
2023), https://www.cnbc.com/2023/01/07/china-suspends-social-
media-accounts-of-covid-policy-critics.html........................................3

Christine Lagorio-Chafkin, *Small Businesses React to the Montana
TikTok Ban*, Inc. (May 18, 2023), https://www.inc.com/christine-
lagorio-chafkin/montana-businesses-react-to-tiktok-ban.html...............10, 12, 13

*Governor Gianforte Bans TikTok in Montana*, Montana.gov Official
State Website (May 17, 2023), https://news.mt.gov/Governors-
Office/Governor_Gianforte_Bans_TikTok_in_Montana ...................3

Donie O'Sullivan, *Republican congressman posts video depicting
violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021,
10:50 a.m.), https://www.cnn.com/2021/11/09/politics/gosar-
anime-video-violence-ocasio-cortez-biden/index.html ........................5

Kaivan Shroff, *Opinion: Banning TikTok Will Stifle Gen Z's Engagement with Democracy*, HuffPost (Mar. 29, 2023, 5:45 a.m.), https://www.huffpost.com/entry/banning-tik-tok-gen-z-democracy_n_6423705be4b00023616349a6 ......................................................15

Kristin Merkel, *Montana business owners say they're concerned by possible TikTok ban in the state*, 7 KBZK Bozeman (Mar. 15, 2023, 11:02 a.m.), https://www.kbzk.com/news/local-news/montana-legislature-tiktok-ban-business-owners ...............................................12

Madison Malone Kircher, *In Montana, Creators Await—and Dread—a TikTok Ban*, New York Times (May 18, 2023), https://www.nytimes.com/2023/05/18/style/montana-tiktok-ban-nfluencers.html...........13, 14

Manuela López Restrepo, *He's the 'unofficial ambassador' of Montana — and isn't buying its TikTok ban*, NPR (May 18, 2023, 5:19 p.m.), https://www.npr.org/2023/05/18/1176936572/montana-tiktok-ban-greg-gianforte-china-security-biden-creators-viral...........................15

Michael Chertoff, *Opinion: Data Localization is Misguided,* The Chertoff Group (Mar. 30, 2017), https://www.chertoffgroup.com/opinion-data-localization-is-misguided ..............................................................7

*Specific App and Service Bans are Fragmenting the Internet*, Internet Society (July 13, 2023), https://www.internetsociety.org/news/statements/2023/specific-app-and-service-bans-are-fragmenting-the-internet/ ............................................................................2, 6, 9, 16

*TikTok is three steps ahead on innovation and content creation*, Wired, https://wired.me/technology/tiktok-innovation-and-content-creation/ ...................................................................................10

## INTERESTS OF *AMICI CURIAE*

NetChoice is a national trade association of online businesses that works to protect free expression and promote free enterprise online. NetChoice's member organizations have an interest in this proceeding, which arises out of a State's outright ban of a single social media platform that was specifically targeted by the State government. The availability of an open, free, and non-fragmented internet is critically important to NetChoice's members. For this reason, NetChoice is actively involved in litigation opposing government-imposed restrictions on online speech and commerce. *See, e.g.*, *NetChoice, LLC v. Moody*, 546 F. Supp. 3d 1082 (N.D. Fla. 2021), *vacated in part by NetChoice, LLC v. Att'y Gen. Fla.*, 34 F.4th 1196, 1203 (11th Cir. 2022), *cert. pending*, No. 22-277 (Sept. 21, 2022); *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092 (W.D. Tex. 2021), *rev'd by* 49 F.4th 439 (5th Cir. 2022), *cert. pending*, No. 22-555 (Dec. 15, 2022).

Chamber of Progress is a tech-industry coalition devoted to a progressive society, economy, workforce, and consumer climate. Chamber of Progress backs public policies that will build a fairer, more inclusive country in which the tech industry operates responsibly and fairly, and in which all people benefit from technological leaps. Chamber of Progress seeks to protect internet freedom and free speech, to promote innovation and economic growth, and to empower technology customers and users. Although TikTok is not affiliated with Chamber of Progress as

a partner company, Chamber of Progress remains steadfast in its commitment to preserving free speech and unrestricted access to information. The issues raised by this case also have implications for Chamber of Progress' partner companies, as they may face pressures to remove TikTok from their respective app marketplaces.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

By banning TikTok, Montana seeks to build a virtual wall that will prevent the flow of information both to and from internet users within the State. The harm of this type of platform-specific ban cannot be overstated. It will be felt personally by countless individuals and businesses who will be abruptly and arbitrarily cut off from one other. It will also be felt at the community level, as local, statewide, national, and global online communities are disconnected. Even further, the internet, as a whole, will become fragmented and its value to humanity diminished.[1]

Montana's effort to cut Montanans off from the global network of TikTok users ignores and undermines the structure, design, and purpose of the internet. If allowed to take effect, the ban will usher in a balkanized internet where information available to users becomes regionally divided based on local politicians' whims or preferences. That outcome would undermine the fundamental nature and benefits of the worldwide web. The ban would equally violate well-established constitutional

---

[1] *See Specific App and Service Bans are Fragmenting the Internet*, Internet Society (July 13, 2023), https://www.internetsociety.org/news/statements/2023/specific-app-and-service-bans-are-fragmenting-the-internet/ [hereinafter "Internet Society"].

principles of federalism, harm local businesses, and curtail speech, innovation, and political advocacy, while disconnecting Montanans from an ever-growing global community.

If Montana's TikTok ban is allowed to stand, it could also set a worrisome precedent. Other states seeking to control disfavored online fora may be emboldened to follow suit in the name of national security. Ironically, this is the sort of authoritarian conduct—inimical to free speech and free commerce—that Montana purports to oppose.[2]

A preliminary injunction is necessary to prevent the multitude of irreparable harms that TikTok, its users, app marketplaces grappling with conflicting state laws, and the global community will suffer if Montana's TikTok ban is allowed to take effect.

---

[2] *See Governor Gianforte Bans TikTok in Montana*, Montana.gov Official State Website (May 17, 2023), https://news.mt.gov/Governors-Office/Governor_Gianforte_Bans_TikTok_in_Montana (citing statements by Gov. Gianforte alleging intelligence gathering by the Chinese Communist Party); *see also* Beina Xu and Eleanor Albert, *Media Censorship in China* (Feb. 17, 2017, 7:00 a.m.), https://www.cfr.org/backgrounder/media-censorship-china ("Chinese media regulations allow[] authorities to crack down on news stories by claiming that they expose state secrets and endanger the country."); *China suspends social media accounts of Covid policy critics* (Jan. 7, 2023), https://www.cnbc.com/2023/01/07/china-suspends-social-media-accounts-of-covid-policy-critics.html (discussing suspension or closure of "social media accounts of more than 1,000 critics of the government's policies on the Covid-19 outbreak").

## ARGUMENT

I. **Montana's Statewide Ban Will Fragment the Internet and Violate Well-Established Principles of Federalism Embodied in the U.S. Constitution**

   A. **The Statewide Ban Would Foster a Patchwork of State-Level Internet Regulation**

By design, the internet is a ***global*** network that enables communication and commerce across state and national borders. Yet, with its unprecedented platform-specific ban, Montana seeks to fragment the internet by erecting a patchwork of state regulation over an inherently borderless technology. Because of the internet's global structure and reach, a statewide ban of a disfavored platform (here, TikTok) will have effects well beyond the State of Montana.

The untenable outcome that would flow from state-level bans on online speech fora is not difficult to imagine: it would lead to regional access—or, more critically, lack of access—to information based solely on local politicians' individual preferences. A governor in one state could seek to ban a platform that hosts viewpoints he finds unpalatable, while a governor in the neighboring state may tout the virtues of the banned platform and instead seek to stifle speech by a different platform with different political leanings.

Such bans also present an impossible task of compliance for the online services that would be subject to them. Consider, for example, the conundrum of a social media platform faced with potentially conflicting state laws. Under a Florida

law that is currently subject to a preliminary injunction, "[a] social media platform **may not** apply or use post-prioritization or shadow banning algorithms for content and material posted by or about . . . a candidate." *NetChoice, LLC*, 34 F.4th at 1206 (emphasis added) (ellipsis in original) (quoting Fla. Stat. § 501.2041(2)(h)), *cert. pending*, No. 22-277 (Sept. 21, 2022). In contrast, a California law that is scheduled to take effect next year (and subject to a pending legal challenge by NetChoice) **requires** online service providers to, among other things, assess whether an online service "could permit children to witness, participate in, or be subject to harmful, or potentially harmful, conduct" and "create a timed plan to mitigate or eliminate the risk before the online service, product, or feature is accessed by children." Cal. Civ. Code § 1798.99.31(a)(1)(B)(iii), (a)(2). How is a social media platform to comply with both laws when, for example, a current politician, who could be up for reelection, posts an anime video of himself violently attacking and killing his opponents?[3] Would a platform's decision to comply with California's mandate potentially expose it to penalties under the Florida statute? This simple example demonstrates the unsustainability of a global internet subject to an irreconcilable patchwork of state-level regulations.

---

[3] *See, e.g.*, Donie O'Sullivan, *Republican congressman posts video depicting violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021, 10:50 a.m.), https://www.cnn.com/2021/11/09/politics/gosar-anime-video-violence-ocasio-cortez-biden/index.html.

Moreover, this balkanized regime would undermine one of the key benefits of the internet as a means of reaching both national and international audiences. *See, e.g.*, *NetChoice, LLC*, 34 F.4th at 1203 (affirming district court's finding that Florida's "first-of-its-kind" law, which " restrict[s] large platforms' ability to engage in content moderation[,] unconstitutionally burden[s] that prerogative" and upholding injunction of same), *cert. pending*, No. 22-277 (Sept. 21, 2022); *NetChoice, LLC*, 573 F. Supp. 3d at 1117 (finding unconstitutional and enjoining Texas law that limits social media platforms' editorial judgment with respect to speech originating or received in Texas), *rev'd by* 49 F.4th 439 (5th Cir. 2022), *cert. pending*, No. 22-555 (Dec. 15, 2022).[4]

"The more governments block or ban each other's online services, the more it fragments the Internet by making user experiences insular and inconsistent from country to country. The global economy will suffer, and many will be left without easy access to cross-border resources that are critical to their daily lives."[5] Similarly, former Secretary of the U.S. Department of Homeland Security Michael Chertoff has observed that "[t]here are many policies that contribute to internet

---

[4] *See also, e.g.*, *NetChoice, LLC v. Griffin*, No. 23-05105 (W.D. Ar. July 7, 2023), Dkt. No. 17 (seeking preliminary injunction of Arkansas law affecting speech of social media platforms); *NetChoice, LLC v. Bonta*, No. 22-08861 (N.D. Cal. Feb. 17, 2023), Dkt. No. 29 (seeking preliminary injunction of California law affecting speech and commerce of online services).

[5] *Internet Society*, *supra* n.1.

balkanization," including government "content limits, and even censorship"—all of which "inhibit the free flow of information across the network."[6] Montana's flat-out ban of TikTok is a prime example of this disturbing trend.

### B.  Montana's Ban Violates Core Principles of Federalism

A platform-specific statewide ban that promotes harmful internet fragmentation is not only antithetical to the First Amendment and free commerce; it also runs afoul of core principles of federalism. *See, e.g.*, *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) (recognizing the internet as "falling within the class of subjects that are protected from State regulation"); *ACLU v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999) (internet subject only to "national regulation"); *see also, e.g.*, *Farina v. Nokia, Inc.*, 625 F.3d 97, 126 (3d Cir. 2010) (applying federal preemption and "recogniz[ing] uniformity as an essential element of an efficient wireless network").

Montana's TikTok ban directly undermines the interests protected by the Constitution's Commerce Clause by restricting the global flow of information and commerce on state lines. *S. Pac. Co. v. State of Ariz.ona ex rel. Sullivan*, 325 U.S. 761, 767 (1945) (explaining that states lack "authority to impede substantially the

---

[6] Michael Chertoff, *Opinion: Data Localization is Misguided,* The Chertoff Group (Mar. 30, 2017), https://www.chertoffgroup.com/opinion-data-localization-is-misguided ("Today we stand at a crossroads. Will the internet continue to be a global system for commerce, politics, and social discourse, or will that world-girding network fracture into component parts?").

free flow of commerce from state to state"). It also requires coercing users of TikTok *outside* Montana to provide their location information to TikTok in order to implement the ban on users *inside* Montana. In this way—by effectively requiring disclosure of more information to protect privacy interests—the ban reflects the same irreconcilable hypocrisy that the State demonstrates by engaging in the very authoritarian conduct that it purportedly opposes.

But the ban's constitutional infirmities do not end at Montana's—or even our nation's—borders. Instead, the ban also discriminates against foreign commerce in violation of the foreign Commerce Clause. Indeed, there can be no clearer example of targeted discrimination against a foreign power than the TikTok ban, which, on its face, is directed at purported protectionism from China's ruling party. *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 66 (1st Cir. 1999) ("[T]he Foreign Commerce Clause restricts protectionist policies, but it also restrains the states from excessive interference in foreign affairs."). The State of Montana has no institutional capability or expertise—much less the constitutional authority—to unilaterally decide how best to manage complex and sensitive foreign affairs. For good reason, "[t]he Constitution gives the federal government the *exclusive authority* to administer foreign affairs." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc) (emphasis added); *see also Perpich v. Dept. of Def.*, 496 U.S. 334, 351 (1990) ("[S]everal constitutional provisions commit matters of

foreign policy and military affairs to the exclusive control of the National Government."). Accordingly, any concerns about potential influence from the Chinese Communist Party are properly addressed at the national level—not by diktats from the state capitol.

Worse still, an *ad hoc*, state-by-state approach to national security concerns posed by online services that are global in their reach is guaranteed to be inconsistent and ineffective: "National security that supposedly comes from banning a particular application is a security blanket made entirely of holes."[7]

Here, Montana's purported basis for such regulation is purely speculative and not unique to TikTok.[8] Accordingly, Montana's conduct, if allowed to stand, would lead to a slippery-slope of state-by-state "protections" for national security that would, in fact, have nothing to do with securing the nation.

In sum, Montana's attempt to legislate foreign policy from its statehouse is not only misguided, but also unlawful, usurping the federal government's exclusive role in the sensitive field of foreign policy and national security.

---

[7] Internet Society, *supra* n.1.

[8] *See* Internet Society, *supra* n.1 ("[T]he idea that these risks are somehow unique to a particular application or service is poorly founded: the same attacks could be as easily embedded in another permitted application. Since the Internet is such a flexible technology, any necessary defense of national security has to come from preventing the attacks *no matter how* they come from the Internet.").

## II.    The Ban Will Harm Montana's Local Businesses

While the ban will have far-reaching national and international effects, its harms will be especially acute at home. Like the myriad online services offered by NetChoice members and Chamber of Progress partner companies, TikTok not only empowers individuals to communicate with large audiences and express themselves by, for example, sharing entertaining videos and personal stories; it also empowers small businesses to thrive. Indeed, one of TikTok's attractions is that it specifically allows businesses to reach a broad audience of potential customers for advertising and direct sales.[9] If Montana businesses lose this platform, their businesses will suffer, and many could even be forced to shutter.

Several of the creator-plaintiffs in this consolidated action exemplify the types of businesses that will suffer harm from this ban, but they are not alone. By one count, *six thousand* small businesses use TikTok in Montana.[10] Every one of these businesses will be harmed directly by the statewide ban.

---

[9] *See TikTok is three steps ahead on innovation and content creation*, Wired, https://wired.me/technology/tiktok-innovation-and-content-creation/; Abby Ohlheiser, *The beauty of TikTok's secret, surprising, and eerily accurate recommendation algorithms*, MIT Technology Review (Feb. 24, 2021), https://www.technologyreview.com/2021/02/24/1017814/tiktok-algorithm-famous-social-media/.

[10] *See* Christine Lagorio-Chafkin, *Small Businesses React to the Montana TikTok Ban*, Inc. (May 18, 2023), https://www.inc.com/christine-lagorio-chafkin/montana-businesses-react-to-tiktok-ban.html.

Cari Olson, for example, would lose a critical advertising medium for her real estate business if the ban were to take effect.[11] Olson, who describes TikTok as "a game-changer for countless Montana small business owners," uses TikTok for business "to help increase sales, expand customer base, and for market trends."[12] Through TikTok, she has "reached an audience that [she] may never have been able to get otherwise."[13] In a guest opinion in the *Billings Gazette* in May 2023, Olson worries that "[t]he long-term implications of this ban [will be] devastating."[14] Olson implored Governor Gianforte to veto the ban, explaining that, "[a]s a small business owner," she was acutely aware of "the significant harms that would befall [Montana] and its people should this ban become law."[15] With the ban set to take effect in January 2024, Olson will lose her "direct line of communications with customers" and predicts that small businesses across Montana, including hers, will experience a "strain on operations" and may "be forced to lay off employees."[16]

---

[11] Cari Olson, *Gov. Must protect Montana small businesses by vetoing TikTok ban*, Billings Gazette (May 10, 2023), https://billingsgazette.com/opinion/columnists/cari-olson-gov-must-protect-montana-small-businesses-by-vetoing-tiktok-ban/article_fd8ec5d4-ee96-11ed-97df-8fd68261daa8.html.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

Like Olson, Caroline Nelson and her husband stand to lose their main source of advertising if the ban is allowed to take effect. They use TikTok to market their small business, Little Creek Lamb and Beef, which currently sells products across the United States.[17] As first-generation ranchers, Nelson and her husband rely solely on social media to sell their products, and they have had incredible success through TikTok. For example, when one video Nelson posted went viral, "it allowed [Little Creek Lamb and Beef] to double one whole arm of [its] business, doubled literally overnight."[18] Nelson fears the ban will "take [them] out at the knees."[19]

Others, like Keri Williams, the founder of Branded Pinto custom-designed hats, would see her business plummet overnight if the ban were to take effect.[20] For Williams, TikTok proved to be her muse. Williams posted videos of herself practicing her "hobby of burning hand-drawn designs into wool hats."[21] When they went viral, she was inspired to turn her hobby into a business, and Branded Pinto

---

[17] *See* Kristin Merkel, *Montana business owners say they're concerned by possible TikTok ban in the state*, 7 KBZK Bozeman (Mar. 15, 2023, 11:02 a.m.), https://www.kbzk.com/news/local-news/montana-legislature-tiktok-ban-business-owners.

[18] *Id.*

[19] *Id.*

[20] *See Lagorio-Chafkin*, *supra* n.10.

[21] *Id.*

was born. If the ban takes effect, Williams will lose access to the source of "90 percent of [her] business."[22]

Similarly, Nicole O'Shea worries about what the ban means for her and her livelihood. After losing her home and car in 2022 flooding, O'Shea "had to rebuild everything from scratch."[23] She looked to TikTok to help launch her business as a developer of product promotion videos suitable for social media platforms. For O'Shea—like thousands of other small business owners in Montana—the potential fallout from the ban may be life-changing: "[I]f I am a law-abiding Montanan who has to walk away from TikTok, then that takes away a very big chunk of my income . . . It takes away my ability to provide for my kids."[24]

## III.   The Ban Will Chill Innovation and Political Advocacy and Disconnect Montanans from the Global Community

While small businesses will feel the brunt of the ban on their bottom lines, other Montanans will experience harm in more personal ways. The statewide ban is undeniably a prior restraint that will censor First Amendment-protected speech. Beyond impeding communication, the ban will hinder innovation and the unrestricted exchange of ideas, including vital political information during an

---

[22] *Id.*

[23] *See* Madison Malone Kircher, *In Montana, Creators Await—and Dread—a TikTok Ban*, New York Times (May 18, 2023), https://www.nytimes.com/2023/05/18/style/montana-tiktok-ban-influencers.html.

[24] *Id.* (internal quotation marks omitted).

upcoming presidential election year. Moreover, it will sever Montanans from the global community and economy, creating a sense of disconnection with far-reaching consequences.

The same features that make TikTok well suited to serve business development are equally beneficial to innovation.[25] Much of that innovation comes from sharing ideas and insights with other members of the TikTok community. As a result of the ban, both Montanans and the global community will suffer.

Crissy Thomas, for example, uses TikTok to share ideas and connect with other ranchers and farmers.[26] Without TikTok, she will lose that important source of education and insight for her farming and ranching practices and will also be cut off from a community that she has spent time and effort building. As Thomas explains, "We're pretty isolated from the rest of the world[.] . . . Cutting off that communication to us is going to kind of be a little limiting to us being able to progress our businesses and progress our practices."[27] At the same time, others who may be interested in learning from Thomas' experience will be worse off.

Like Thomas, Christian Poole worries most about losing the connections he has made through TikTok. Poole, who is known on TikTok as "the 'unofficial

---

[25] *See* Ohlheiser, *supra* n.9.

[26] *See* Kircher, *supra* n.23.

[27] *Id.*

ambassador' of Montana," describes creating content for his more than 400,000 TikTok followers as his "most favorite hobby in the world."[28] Poole fears losing "connection to all those followers . . . all the people that [he's] grown to love and befriend."[29] Poole's followers would, likewise, lose their connection to him, and the videos he shares "about the culture, everyday life, and quirks of the picturesque state."[30]

Moreover, TikTok's increasing political influence, particularly among young voters, is evident through its role in empowering youth activism and facilitating information sharing about political candidates, thereby encouraging higher voter engagement. The platform's ability to resonate with the younger generation has fostered a new wave of political involvement and awareness, which is crucial for a vibrant and informed democratic process. If the State's ban remains in place, it will cut off many Montanans from the free flow of political ideas, which could be especially detrimental during a presidential election year.[31]

---

[28] *See* Manuela López Restrepo, *He's the 'unofficial ambassador' of Montana — and isn't buying its TikTok ban*, NPR (May 18, 2023, 5:19 p.m.), https://www.npr.org/2023/05/18/1176936572/montana-tiktok-ban-greg-gianforte-china-security-biden-creators-viral.

[29] *Id.*

[30] *Id.*

[31] *See, e.g.*, Kaivan Shroff, *Opinion: Banning TikTok Will Stifle Gen Z's Engagement with Democracy*, HuffPost (Mar. 29, 2023, 5:45 a.m.), https://www.huffpost.com/entry/banning-tik-tok-gen-z-democracy_n_6423705be4b00023616349a6.

In short, the ban will sever these important human connections, which, through creative avenues for sharing, innovation, and advocacy, benefit society as a whole.

## CONCLUSION

"Part of the safety and security of citizens is their freedom to interact with others in the ways they wish."[32] Banning TikTok—or any other social media platform—"inherently takes away that freedom."[33] Montana's statewide ban on TikTok tramples on multiple constitutional rights, infringes on the federal government's exclusive authority to administer foreign affairs, and hurts Montanans. For all of these reasons—and the reasons set forth at length in the plaintiffs and consolidated plaintiff's briefing—this Court should enjoin the statewide ban and restore the constitutional freedoms and balance that the ban would disrupt.


Dated: August 7, 2023          Respectfully submitted,

By: */s/ Jonathan C. McDonald*
Jonathan C. McDonald
McDonald Law Office, PLLC
P.O. Box 1570
Helena, MT 59624
jm@mcdonaldlawmt.com
ph. (406) 442-1493

---

[32] Internet Society, *supra* n.1.

[33] *Id.*

Ilana H. Eisenstein, admitted *pro hac vice*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
ilana.eisenstein@us.dlapiper.com
ph. (215) 656-3300

Peter Karanjia, admitted *pro hac vice*
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
peter.karanjia@dlapiper.com
ph. (202) 799-4000

*Attorneys for Amici Curiae, NetChoice LLC*
*and Chamber of Progress*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief of *Amici Curiae* NetChoice, LLC and Chamber of Progress contains 3,471 words, exclusive of caption and certificates of service and compliance.

Dated: August 7, 2023

By: */s/ Jonathan C. McDonald*
Jonathan C. McDonald

## CERTIFICATE OF SERVICE

I certify that on August 7, 2023, I caused the foregoing Brief of *Amici Curiae* NetChoice, LLC and Chamber of Progress to be filed electronically using the Court's CM/ECF system, which will provide notice to all counsel of record.

Dated: August 7, 2023

By: */s/ Jonathan C. McDonald*
Jonathan C. McDonald