Natasha Prinzing Jones
BOONE KARLBERG P.C.
201 West Main St., Suite 300
Missoula, MT 59807
(406) 543-6646
npjones@boonekarlberg.com

*Attorney for Plaintiffs*

Rob Cameron
JACKSON, MURDO & GRANT, P.C.
203 North Ewing
Helena, MT 59601
(406) 389-8244
rcameron@jmgattorneys.com

*Attorney for Consolidated Plaintiff*

*(additional counsel listed on signature page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| SAMANTHA ALARIO, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| and | ) | |
| | ) | CV 23-56-M-DWM |
| TIKTOK INC., | ) | CV 23-61-M-DWM |
| | ) | |
| *Consolidated Plaintiff,* | ) | **CONSOLIDATED REPLY** |
| | ) | **IN SUPPORT OF PLAINTIFFS' AND** |
| v. | ) | **CONSOLIDATED PLAINTIFF'S** |
| | ) | **MOTIONS FOR PRELIMINARY** |
| AUSTIN KNUDSEN, *in his official* | ) | **INJUNCTION** |
| *capacity as Attorney General of the* | ) | |
| *State of Montana,* | ) | |
| | ) | |
| *Defendant.* | ) | |

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................1

II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................2

       A.     SB419 Violates the First Amendment.....................................2

              1.     SB419 is Subject to First Amendment Scrutiny. .......................2

              2.     SB419 is Impermissibly Overbroad............................................4

              3.     SB419 Fails First Amendment Scrutiny. ...................................6

       B.     Federal Law Preempts SB419. ............................................15

       C.     SB419 Violates the Dormant Commerce Clause. ...............................18

III.   THE REMAINING FACTORS SUPPORT AN INJUNCTION. .................19

IV.    CONCLUSION...........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986)................................................................2, 3

*Bantam Books Inc. v. Sullivan*,
  372 U.S. 58 (1963)...................................................................7

*Bartnicki v. Vopper*,
  200 F.3d 109 (3d Cir. 1999), *aff'd*, 532 U.S. 514 (2001)....................................8

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009) (en banc) ..........................................4, 8

*Bibb v. Navajo Freight Lines*,
  359 U.S. 520 (1959)...................................................................19

*Board of Airport Commissioners of City of Los Angeles v. Jews for
  Jesus, Inc.*,
  482 U.S. 569 (1987)...................................................................4

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)...................................................................8

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011)...............................................................9, 14, 15

*Cal. Chamber of Com. v. Council for Educ. and Rsch. on Toxics*,
  29 F.4th 468 (9th Cir. 2022) ..............................................................19

*City of Los Angeles v. Taxpayers for Vincent*,
  466 U.S. 789 (1984)...................................................................5

*Coalition for Indep. Tech. Research v. Abbott*,
  No. 23-cv-0783 (W.D. Tex.).................................................................12

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ..............................................................6

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) .................................................................. 3

*Edwards v. City of Coeur d'Alene*,
  262 F.3d 856 (9th Cir. 2001) ................................................................ 14

*Edwards v. District of Columbia*,
  755 F.3d 996 (D.C. Cir. 2014) .............................................................. 11

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................... 3

*FEC v. Cruz*,
  142 S. Ct. 1638 (2022) .......................................................................... 10

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ................................................................................ 5

*Granholm v. Heald*,
  544 U.S. 460 (2005) .............................................................................. 18

*Green v. Miss United States of Am., LLC*,
  52 F.4th 773 (9th Cir. 2022) .................................................................. 8

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) .................................................................................. 9

*Hurley v. Irish-Am. Grp.*,
  515 U.S. 557 (1995) .............................................................................. 13

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) .............................................................. 15

*Isaacson v. Horne*,
  716 F.3d 1213 (9th Cir. 2013) ................................................................ 4

*Jacobs v. Clark County School District*,
  526 F.3d 419, 437 (9th Cir. 2008) ....................................................... 13

*Junior Sports Mags. v. Bonta*, 2023 WL 5945879, --- F.4th ---- (9th
  Cir. Sept. 13, 2023). ............................................................................ 11

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ............................................................10

*Lim v. City of Long Beach*,
    217 F.3d 1050 (9th Cir. 2000) ............................................................13

*Mahanoy Area School District v. B.L.*,
    141 S. Ct. 2038 (2021) .....................................................................13

*Marland v. Trump*,
    498 F. Supp. 3d 624 (E.D. Pa. 2020) ..........................................19, 20

*Minneapolis Star & Tribune Co.*,
    460 U.S. 575 (1983) ............................................................................6

*Moore v. Harper*,
    143 S. Ct. 2065 (2023) .......................................................................9

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) ......................................................15, 16

*Near v. Minnesota*,
    283 U.S. 697 (1931) ............................................................................2

*NetChoice, LLC v. Griffin*,
    No. 5:23-CV-05105, 2023 WL 5660155 (W.D. Ark. Aug. 31,
    2023) ....................................................................................................5

*NFTC v. Natsios*,
    181 F.3d 38 (1st Cir. 1999) ...............................................................18

*Odebrecht Const., Inc. v. Prasad*,
    876 F. Supp. 2d 1305 (S.D. Fla. 2012) .............................................19

*Pac. Coast Horseshoeing Sch. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020) .............................................................3

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) .........................................................................5, 12

*Project Veritas v. Schmidt*,
    72 F.4th 1043 (9th Cir. 2023) ............................................................13

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015).................................................................8

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975)..............................................................6, 7

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011).............................................................2, 3, 7

*Stanley v. Georgia*,
    394 U.S. 557 (1969).................................................................6

*TikTok Inc. v. CFIUS*,
    No. 20-1444 (D.C. Cir. Aug. 22, 2023)...................................18

*Turner Broad. Sys. v. F.C.C.*,
    520 U.S. 180 (1997)...............................................................12

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994)............................................................8, 10

*U.S. WeChat Users All v. Trump*,
    488 F. Supp. 3d 912 (N.D. Cal. 2020)...................................14

*UBCJA Loc. 586 v. NLRB*,
    540 F.3d 957 (9th Cir. 2008) .................................................13

*United States v. O'Brien*,
    391 U.S. 367 (1968).................................................................8

*United States v. Playboy Ent. Grp.*,
    529 U.S. 803 (2000)............................................................8, 10

*United States v. Stevens*,
    559 U.S. 460 (2010).................................................................4

*Valle Del Sol Inc. v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) ...................................................7

*Von Saher v. Norton Simon Museum*,
    592 F.3d 954 (9th Cir. 2010) .................................................17

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989)..................................................................12, 13

*Wauchope v. U.S. Dep't of State,*
   985 F.2d 1407 (9th Cir. 1993) ...............................................6

*Weinberg v. City of Chicago,*
   310 F.3d 1029 (7th Cir. 2002) ..............................................11

*Williams-Yulee v. Florida Bar,*
   575 U.S. 433 (2015)..............................................................14

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017)................................................................9

**Statutes**

50 U.S.C. § 1702(b)(3).................................................................16

Defense Production Act of 1945....................................................16, 17

Foreign Investment Risk Review Modernization Act of 2018, Pub. L.
   No. 115-232, § 1702(c), 132 Stat. 2174, 2176 ....................17

## I.    INTRODUCTION

Unless the Court intervenes, in less than four months, the State of Montana (the "State") will shutter a forum for expression used by thousands of its residents. The State characterizes this unprecedented ban as a regulation of conduct, but SB419 prohibits First Amendment speech: videos created by Montanans, including the Creator Plaintiffs, on topics ranging from art to politics.  The State insists that SB419 is necessary to address supposed national security threats, but the federal government has the exclusive authority to respond to any such threats, and the State offers no credible evidence to substantiate those threats.  Nor does the State explain why banning TikTok is necessary when less restrictive alternatives would address the State's purported concerns.  For all of these reasons, Consolidated Plaintiff TikTok Inc. and the Creator Plaintiffs (collectively, "Plaintiffs") are likely to succeed on their First Amendment claims.

Plaintiffs are likely to succeed on their preemption and Commerce Clause claims, too.  The Ban not only intrudes on the federal government's exclusive authority over matters of foreign affairs and national security, but it also conflicts with two federal statutes.  The State's contrary arguments ignore binding Circuit precedent and misconstrue ongoing federal regulatory proceedings designed to address the State's alleged concerns.  SB419 also violates the dormant Commerce Clause because it bans TikTok only so long as it is owned by ByteDance Ltd. or

1

another foreign company, and because it regulates a platform Montanans use to conduct worldwide commercial activity—conclusions the State does not rebut.

Accordingly, all of the State's merits arguments fail, and the State does not dispute that the serious harms detailed in Plaintiffs' opening briefs are irreparable. The Court should enjoin enforcement of SB419.

## II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.     SB419 Violates the First Amendment.

#### 1.     SB419 is Subject to First Amendment Scrutiny.

The State's argument that SB419 regulates conduct, not speech, is belied by the statute itself, which regulates "the operation of [TikTok]." SB419 § 1(1)(a). Because the use and operation of TikTok require the "creation and dissemination of information," SB419 regulates "speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (rejecting argument that "sales, transfer, and use of prescriber-identifying information are conduct, not speech"); *see Near v. Minnesota,* 283 U.S. 697, 720 (1931) (government cannot evade scrutiny by "[c]haracterizing the publication as a business, and the business as a nuisance").

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 700 (1986), does not support a different conclusion. There, the Supreme Court upheld an order closing a bookstore where prostitution was occurring because the order "b[ore] absolutely *no*

*connection* to any expressive activity." *Id.* at 707 n.3 (emphasis added). *Arcara*'s principles do not apply to a regulation "aimed at particular speakers" (here, TikTok and its users), *Sorrell*, 564 U.S. at 566–67, that targets "conduct" "intimately related" to expression (the operation and use of TikTok), *Arcara*, 478 U.S. at 707 n.3, or "impose[s] a disproportionate burden upon those engaged in protected First Amendment activities" (Plaintiffs and all Montanans), *id.* at 704; *see also Doe v. Harris*, 772 F.3d 563, 572–74 (9th Cir. 2014) (distinguishing *Arcara*); *Pac. Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020) ("[C]ourts must consider a restriction's practical effects in determining whether it implicates speech"). Moreover, unlike *Arcara*—where the bookstore owner "remain[ed] free to sell the same materials at another location," 478 U.S. at 705-06—SB419 prohibits TikTok from operating anywhere in Montana.

The State cannot avoid First Amendment scrutiny by portraying SB419 as an exercise of "traditional police power." Opp. 9, 23. There is nothing traditional about an unprecedented state-wide ban of a communications platform. In any event, "a significant impairment of First Amendment rights" is subject to First Amendment scrutiny even if (as the State contends) the restraint on speech "arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct." *Elrod v. Burns*, 427 U.S. 347, 362 (1976). That is certainly

3

true here, where the inarguable result of the Ban is to restrain Plaintiffs' speech and

TikTok Inc.'s protected content-moderation activities.[1]

2.      SB419 is Impermissibly Overbroad.

The State concedes that SB419 eliminates Plaintiffs' ability to "express

themselves via TikTok," Opp. 13, and does not dispute that the First Amendment

protects this expression.  Since virtually *all* of the speech SB419 suppresses—not

just a "substantial" amount—is protected, the law necessarily exceeds any

"legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (cleaned

up); *see also* CCIA Br. 4 (law bans app stores' protected speech).

That SB419 bans what the State tries to downplay as "only one" medium,

Opp. 21, is irrelevant.  The State ignores *Board of Airport Commissioners of City of*

*Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574–75 (1987) and *Berger v. City*

*of Seattle*, 569 F.3d 1029, 1056 (9th Cir. 2009) (en banc), holding that single-forum

bans (an airport and a public park) were overbroad even though the affected persons

could "speak freely" elsewhere, Opp. 21.  *See* Creator Br. 14; TikTok Br. 17.  If "a

law prohibiting 'all protected expression' at a single airport is not constitutional, it

follows with even greater force that the State may not enact [a] complete bar to the

---

[1] Plaintiffs do not bear a heightened burden on a facial challenge, Opp. 8–9.  Whether a challenge is brought on a facial or as-applied basis "matters primarily as to the remedy appropriate if a constitutional violation is found."  *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013).

exercise of First Amendment rights on websites," like TikTok, "integral to the fabric of our modern society and culture." *Packingham v. North Carolina*, 582 U.S. 98, 109 (2017); *see NetChoice, LLC v. Griffin*, No. 5:23-CV-05105, 2023 WL 5660155, at *16 (W.D. Ark. Aug. 31, 2023) ("[T]he primary purpose of a social media platform is to engage in speech.").

*City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808 (1984), Opp. 17, does not suggest otherwise. The "evil" in that case—visual blight from signs on public property—was not a "by-product" of expression but rather was "created by" and inseparable from the "medium … itself," thereby justifying restriction of the entire medium. *Id.* at 810; *see Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (ban avoids overbreadth "only if each activity within the proscription's scope is an appropriately targeted evil"). In contrast, creating, posting, disseminating, and moderating videos on TikTok does not itself create security and privacy concerns. Montana "could have" addressed its purported concerns "without prohibiting expressive activity," thus rendering SB419 constitutionally overbroad. *Vincent*, 466 U.S. at 810; *see also* Creator Br. 12–13, TikTok Br. 11–13 (less restrictive alternatives); ACLU Br. 11–14; RCFP Br. 12–14.

5

3.      <u>SB419 Fails First Amendment Scrutiny.</u>

a)      *SB419 is Subject to at Least Strict Scrutiny.*

SB419 singles out a medium for disfavor, bans speech before it can occur, prohibits speech on a speaker- and content-basis, and abridges Montanans' right to receive information.  For each independent reason, SB419 is subject to strict scrutiny.

The State ignores the first two independent bases for applying strict scrutiny.  First, SB419 "has singled out" a medium of expression "for special treatment," rendering it "presumptively unconstitutional." *Minneapolis Star & Tribune Co.*, 460 U.S. 575, 582, 585 (1983); *see* Creator Br. 14-15; TikTok Br. 14-15.  Second, strict scrutiny "normally applie[s]" to laws, such as SB419, that abridge citizens' "right to receive information and ideas." *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1413 (9th Cir. 1993); *see also Stanley v. Georgia*, 394 U.S. 557, 564 (1969).

SB419 is also a prior restraint.  *See* Creator Br. 10–11 (Supreme Court has applied higher standard to prior restraints).  Prior restraints are not limited to permitting or preapproval regimes.  *See* Opp. 19.  In fact, "the prior restraint doctrine developed in response to laws that outright prohibited speech prior to publication." *Cuviello v. City of Vallejo*, 944 F.3d 816, 827 n.5 (9th Cir. 2019).  Nor does the availability of an alternative forum "justify an otherwise impermissible prior restraint." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975).  "One is not

6

to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Id.* (prohibiting performance was prior restraint regardless of alternative venues); *see also Bantam Books Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (law was an invalid prior restraint even though publishers could distribute through other means). In any event, TikTok Inc. cannot exercise its protected editorial and content moderation activities at all, and the State ignores unrebutted evidence showing that TikTok is a one-of-a-kind forum the Creator Plaintiffs cannot access elsewhere. DiRocco Decl. ¶ 11; Goddard Decl. ¶ 9; Held Decl. ¶ 5.

SB419 is also subject to strict scrutiny because it is content-based. A regulation is content-based if its "underlying purpose … is to suppress particular ideas … or if the regulation, by its very terms, singles out particular content for differential treatment." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 819 (9th Cir. 2013). SB419 does both. Its purpose is to suppress content that allegedly encourages "minors to engage in dangerous activities," SB419 at 1, and allows China to engage in a form of "asymmetric warfare," ECF 13-2 at 27:1-9. *See Sorrell*, 564 U.S. at 565 ("stated purposes may… be considered" in determining whether law is content-based); *see also Valle Del Sol*, 709 F.3d at 819 (stated purpose, legislative history, and disproportionate sanctions showed law was content-based). And it "singles out particular content" and speakers (TikTok and its users) "for differential

treatment." *Berger*, 569 F.3d at 1051; *see also Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015) (speaker-based restrictions demand strict scrutiny when the "speaker preference reflects a content preference") (citation omitted).

The State wrongly relies on *United States v. O'Brien*, 391 U.S. 367 (1968), to argue that strict scrutiny should not apply—ignoring that *O'Brien* applies to "regulations that have 'only an incidental effect on protected speech.'" *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 790 (9th Cir. 2022). "[A]lthough it may be possible to find some kernel of conduct in almost every act of expression," that does not dilute the level of applicable scrutiny. *Bartnicki v. Vopper*, 200 F.3d 109, 120 (3d Cir. 1999) (*O'Brien* inapplicable to claims based on disclosure and broadcast of cellphone conversation), *aff'd*, 532 U.S. 514 (2001). Where, as here, a law "directly and immediately affects" First Amendment rights, "*O'Brien* is inapplicable." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000).

> *b)      SB419 Fails Any Level of Review.*

Both strict and intermediate scrutiny require the State to prove at least that the law (1) will "in fact" serve a "substantial" government interest "unrelated to the suppression of free expression" by alleviating in "a direct and material way" harms that are "not merely conjectural," and (2) is narrowly tailored to suppress no more speech "than is essential to the furtherance of that interest." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662, 664 (1994) (cleaned up) (intermediate scrutiny); *cf. United*

*States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000) (strict scrutiny also requires the interest to be "compelling," and the law to be "the least restrictive means to further" it).  SB419 fails both prongs.

> (1)  The State Fails to Establish that SB419 Serves a Substantial Interest.

SB419 declares two ostensible legislative interests—removal of allegedly "dangerous content that directs minors to engage in dangerous activities," SB419 at 1, and protection of Montanans from Chinese "espionage," *id.* at 1–2.  The State offers no defense of the first basis.  Nor could it.  The Supreme Court has repeatedly invalidated laws designed to protect minors from protected speech.  *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794–804 (2011).

The State focuses instead on the second claimed interest—protecting Montanans from foreign spies—but it fares no better.  National security is exclusively a federal concern.  *See Hines v. Davidowitz*, 312 U.S. 52, 63 (1941).  The State's cases do not hold otherwise.  *Washington Post v. McManus*, for example, concerned the integrity of elections, 944 F.3d 506, 520 (4th Cir. 2019), which states have a "constitutional duty" to administer, *see Moore v. Harper*, 143 S. Ct. 2065, 2085 (2023).  By contrast, the Constitution assigns the federal government, not states, exclusive responsibility for national security and foreign policy, such as the "international espionage" SB419 purports to address.  *See* SB419 at 1–2; *see Ziglar*

*v. Abbasi*, 582 U.S. 120, 142 (2017) ("National-security policy is the prerogative of the Congress and President") (citation omitted).

Even if national security were a cognizable *state* interest (it is not), the State has not shown that TikTok's alleged harms "are real, not merely conjectural, and that the [Ban] will in fact alleviate these harms in a direct and material way." *Turner*, 512 U.S. at 664; *cf. Playboy*, 529 U.S. at 819, 822 (strict scrutiny also requires "hard evidence," not just "anecdote and supposition"). The State claims it is investigating TikTok's "safety and data-harvesting features," Opp. 18, and took discovery in this case to bolster its purported interest, *see* ECF 19, but it cites no evidence that any U.S. user data has been shared with the Chinese government—or any other evidence substantiating its purported concerns. Instead, it relies on unconfirmed allegations in selected news articles, Opp. 2-6, which fails to meet its burden. *See FEC v. Cruz*, 142 S. Ct. 1638, 1653 (2022) ("handful of media reports and anecdotes" illustrating risks of harm insufficient to justify speech restrictions); *Klein v. City of San Clemente*, 584 F.3d 1196, 1202 (9th Cir. 2009) (collecting cases where lack of evidence rendered speech restrictions unjustified).

Even if the Court considers these articles, they do not establish a constitutionally sufficient basis to ban TikTok. For example, the State cites one article claiming that TikTok's code allows it to monitor user activity through an in-app browser. Opp. 3. The article acknowledges, however, the same is true for other

platforms, and there is no evidence TikTok is "actually using that code to collect data, send it to their servers or share it with third parties."[2]  The State's claim that "C.C.P. members" access "personal, private data from every Montana TikTok user," Opp. 10, is similarly based on unproven allegations in a lawsuit by a former ByteDance Inc. employee who left the company five years ago, in 2018.[3]  Opp. 4-6. This is not evidence that can be used to justify a restraint on speech.  *See Edwards v. District of Columbia*, 755 F.3d 996, 1004 (D.C. Cir. 2014) ("Current burdens demand contemporary evidence.").  And the State does not address—let alone rebut—TikTok Inc.'s evidence regarding its efforts to create a safe environment for minor users and to protect its users' privacy.  *See* ECF 14, 15, 16; *see also Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002) (no compelling interest where city failed to address contradictory evidence).

Because the State "spins a web of speculation—not facts or evidence," it "has not justified its intrusion on protected speech."  *Junior Sports Mags. v. Bonta*, 2023 WL 5945879, at *7, --- F.4th ---- (9th Cir. Sept. 13, 2023).

---

[2] Richard Nieva, TikTok's In-App Browser Includes Code That Can Monitor Your Keystrokes, Researcher Says, Forbes (Aug. 18, 2022), perma.cc/M578-4X29.

[3] Thomas Fuller & Sapna Maheshwari, Ex-ByteDance Executive Accuses Company of 'Lawlessness,' N.Y. Times (May 12, 2023), perma.cc/DE96-KD7G.

>           (2)     SB419 Fails First Amendment Scrutiny Because It
>                   Is Not Narrowly Tailored.

SB419 independently fails First Amendment scrutiny because it is not narrowly tailored—let alone the least restrictive means of accomplishing its purported interest (as strict scrutiny requires).

*First*, SB419 "burden[s] substantially more speech than is necessary" to further the State's purported interests. *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). The State completely ignores alternatives identified by Plaintiffs—such as restrictions on "data that companies may collect from Montana users," rules preventing companies from "selling or providing data to certain third parties," or the State's contemporaneously enacted data privacy law. TikTok Br. 11. Such more targeted measures "must be the State's first resort," but there is no evidence that such alternatives were even considered, let alone determined to be ineffective. *See Packingham*, 582 U.S. at 107; *Turner Broad. Sys. v. F.C.C.*, 520 U.S. 180, 213 (1997) (intermediate scrutiny requires showing interest "would be achieved less effectively absent the regulation"). Indeed, the Texas Attorney General recently argued that "limiting [a ban on TikTok] to government devices is the 'obvious alternative' to fully banning" it across the state. *Coalition for Indep. Tech. Research v. Abbott*, No. 23-cv-0783 (W.D. Tex.), ECF 21 at 19. Because SB419 "is substantially overbroad, it cannot satisfy the requirement that the restriction be

'narrowly tailored.'" *UBCJA Loc. 586 v. NLRB*, 540 F.3d 957, 969 (9th Cir. 2008); *see supra* Section II.A.2.

*Second*, the State has failed to show SB419 leaves open "ample alternative channels of communication." *Ward*, 491 U.S. at 803; *see also Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000). The State cites *Jacobs v. Clark County School District*—a case involving a ban on expressive clothing in public schools, where students have limited First Amendment protections, *see Mahanoy Area School District v. B.L.*, 141 S. Ct. 2038, 2045 (2021)—but even there, students could still express themselves in other ways. 526 F.3d 419, 437 (9th Cir. 2008). Here, by contrast, SB419 will stop Plaintiffs from communicating with their chosen audiences, which undisputedly cannot be reconstituted elsewhere. *See* Goddard Decl. ¶ 9 (without TikTok, "I would not simply be able to move my videos to another app and have the same audience."); DiRocco Decl. ¶ 11 (similar); Chandlee Decl. ¶¶ 15-16 (describing TikTok's "unique attributes"). SB419 also will block Plaintiffs from communicating through their preferred means and will completely bar TikTok Inc. from exercising its editorial rights to curate content. *See Project Veritas v. Schmidt*, 72 F.4th 1043, 1064 (9th Cir. 2023) ("Regulations may not hamper a speaker's preferred mode of communication to such an extent that they compromise or stifle the speaker's message."); *Hurley v. Irish-Am. Grp.*, 515 U.S. 557, 570 (1995) ("the presentation of an edited compilation of speech generated by other

persons … fall[s] squarely within the core of First Amendment security"). The Ban thus "fails to leave open ample alternative means of communication." *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 866-67 (9th Cir. 2001) (alternatives inadequate because it was "not clear" plaintiff "could employ [them] effectively to 'reach the minds of willing listeners'"); *U.S. WeChat Users All v. Trump*, 488 F. Supp. 3d 912, 929 (N.D. Cal. 2020) (regulation that "eliminates a channel of communication without any apparent substitutes" burdens "substantially more speech" than needed).

*Third*, by arguing that SB419 "regulates one channel of internet expression but leaves all others untouched," Opp. 17, the State effectively concedes that SB419 is underinclusive relative to its purported goals. While it is "always somewhat counterintuitive to argue that a law violates the First Amendment by abridging *too little* speech," *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015), "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint," *Brown*, 564 U.S. at 802. That inference is amply justified here. SB419 leaves other entities free to collect and sell Montanans' personal data, including to the Chinese government. The State does not dispute there are more effective ways for a foreign country to engage in espionage, such as buying information from data brokers, conducting open-source intelligence gathering, and hacking servers—none of which SB419 addresses. *See* Weber Decl. ¶ 13. That underinclusiveness is "alone

14

enough" to invalidate SB419.  *Brown*, 564 U.S. at 801–02; *IMDb.com v. Becerra*, 962 F.3d 1111, 1126-27 (9th Cir. 2020) (citing cases).

### B.    Federal Law Preempts SB419.

Because SB419 impermissibly intrudes on the field of foreign affairs and conflicts with federal law governing foreign interests in domestic corporations, it is invalid under the doctrines of field and conflict preemption.

The State questions the "vitality" of foreign affairs "field preemption," Opp. 22-23, yet acknowledges precedent that prevents states from "intrud[ing] on a matter of foreign policy with no real claim to be addressing an area of traditional state responsibility," *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1075 (9th Cir. 2012) (en banc).  SB419 does not regulate in a field of traditional state responsibility.  The State claims SB419 is a "consumer-protection law," but points to a *different* statute that actually *is* a consumer protection law.  Opp. 23.  In deciding a statute's "real purpose," courts must "not stop" with the statute's "general subject area," and instead look to its "text and legislative history," *Movsesian*, 670 F.3d at 1074-75, which here show the State's goal: to "push[ ] back against the Chinese communist government," TikTok Br. 18-19 (quoting Mr. Knudsen); *see* Creator Br. 20-22.  These and similar statements, by the officials who drafted, sponsored, signed, and are defending SB419, show that the statute reflects a "goal [that] falls outside the realm of traditional [state] regulation." *Movsesian*, 670 F.3d at 1076 n.4.

15

The State faults Plaintiffs for failing to provide evidence that SB419 has a direct impact on foreign relations.  Opp. 25-26.  But such evidence is not required where the law facially intrudes into federal affairs.  *See Movsesian*, 670 F.3d at 1076. SB419 asserts that the Chinese government has "control and oversight" of TikTok Inc.'s ultimate parent (ByteDance Ltd., a Cayman Islands-registered entity), purportedly making TikTok a "valuable tool" "to conduct corporate and international espionage."  SB419 at 1-2.  Thus, SB419's "effect on foreign affairs is not incidental" but "intended to send a political message on an issue of foreign affairs."  *Movsesian*, 670 F.3d at 1077.

SB419 is also preempted because it conflicts with federal law.  Plaintiffs *do* "invoke foreign-affairs conflict preemption," Opp. 22, explaining that SB419 conflicts with two federal statutes: Section 721 of the Defense Production Act of 1945 ("Section 721") and the International Emergency Economic Powers Act ("IEEPA").  *See* TikTok Br. 20-23; Creator Br. 22-25.

The State claims that IEEPA does not preempt SB419 because it bans a "product," not information.  Opp. 28.  But the State cannot seriously dispute that TikTok content falls within IEEPA's definition of "informational materials," which includes "publications, films … artworks, and news wire feeds."  50 U.S.C. § 1702(b)(3).  Nor is TikTok estopped from claiming preemption by having prevailed on its argument that IEEPA prohibits the federal government from banning

TikTok.  Opp. 30.  To the contrary, these positions are entirely consistent.  IEEPA reflects Congress's considered judgment that national security concerns do not override Americans' fundamental rights to exchange information.  TikTok Br. 22-23.  Montana may not second-guess that judgment.  *See Von Saher v. Norton Simon Museum*, 592 F.3d 954, 965 (9th Cir. 2010).

SB419 also conflicts with Section 721.  "[W]hen considering national security risks, the Committee on Foreign Investment in the United States ["CFIUS"] may consider … the extent to which a covered transaction is likely to expose … personally identifiable information … or other sensitive data of United States citizens to access by a foreign government …."  Foreign Investment Risk Review Modernization Act of 2018, Pub. L. No. 115-232, § 1702(c), 132 Stat. 2174, 2176.  These are *exactly* the concerns that purportedly underlie the Ban.  *See* Opp. 10 (arguing Ban prevents "TikTok's data-harvesting practices and ownership by a hostile foreign government").  That the Ban is void if TikTok is "sold to a company that is not incorporated in any other country designated as a foreign adversary," SB419 § 4,[4] further demonstrates the core national security issues animating SB419.  TikTok Inc. is engaged in "ongoing" negotiations with CFIUS to resolve the federal government's national security concerns, and the implementation of any agreement

---

[4] Section 4 appears to assume that TikTok is ultimately owned by a Chinese-incorporated company.  In fact, ByteDance Ltd. is incorporated in the Cayman Islands.  Chandlee Decl. ¶ 6.

on a nationwide basis would be frustrated by SB419, which bans TikTok irrespective of whether the federal government's national security concerns are "resolved by mutual agreement."  Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Aug. 22, 2023).  A party would have little incentive to engage in such negotiations if a resolution merely results in a patchwork of states requiring divestment based on their own interpretation of the same national security concern.

### C.   SB419 Violates the Dormant Commerce Clause.

SB419 violates the Commerce Clause both because it bans TikTok unless it is "sold to a company that is not incorporated in" China or another "foreign adversary," SB419 § 4,[5] and because it regulates a platform Montanans use to conduct worldwide commercial activity.

The State admits "it ban[ned] TikTok because of" the app's "foreign" ownership, Opp. 10, which means that SB419 *discriminates* against foreign commerce.  *See* TikTok Br. 25-26.  Like the Massachusetts law banning agencies from "doing business with Burma," SB419's "chief goal" is to "affect business decisions pertaining to" a foreign nation.  *NFTC v. Natsios*, 181 F.3d 38, 46-47 (1st Cir. 1999), *aff'd on other grounds*, *Crosby v. NFTC*, 530 U.S. 363 (2000). Therefore, it is invalid "per se."  *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (citation omitted).

---

[5] *See supra* n.4.

The State also admits that SB419 "prohibits the use of TikTok" as an "instrumentality" of interstate commerce and concedes the Supreme Court invalidated similar "barrier[s]" to the "interstate movement" of commerce across state lines in cases like *Bibb v. Navajo Freight Lines*, 359 U.S. 520 (1959). *See* Opp. 38–39. The State nevertheless argues that SB419 differs from those cases because TikTok provides an instrument for online commerce rather than "physical … goods." *Id.* at 39. But the State cites no case limiting the Commerce Clause to physical goods, and has no response to cases applying the Commerce Clause to the internet. *See* Creator Br. 26 (citing cases).

## III.   THE REMAINING FACTORS SUPPORT AN INJUNCTION.

The State concedes that Plaintiffs would suffer irreparable harm from the loss of their constitutional rights. Opp. 40–41. Plaintiffs' economic harm also constitutes irreparable harm. TikTok Br. 26–27; Creator Br. 27. The State does not even address TikTok Inc.'s irreparable harm claim. And the Creator Plaintiffs' harm is not "speculative," as the State argues, Opp. 41. *See Marland v. Trump*, 498 F. Supp. 3d 624, 641–42 (E.D. Pa. 2020) (crediting similar evidence).

Equity and the public interest also favor an injunction. The State does not dispute the "significant public interest in upholding First Amendment principles," *Cal. Chamber of Com. v. Council for Educ. and Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022), or in having a "unified federal policy toward" China, *Odebrecht*

*Const. v. Prasad*, 876 F. Supp. 2d 1305, 1321 (S.D. Fla. 2012).  Its unsubstantiated concerns about Chinese influence fail to address the contrary evidence.  *See Marland*, 498 F. Supp. 3d at 642–43.

## IV.   CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' opening briefs, the Court should grant Plaintiffs' Motions for a Preliminary Injunction.

Dated: September 15, 2023

Respectfully submitted,

*/s/ Natasha Prinzing Jones*
Natasha Prinzing Jones
BOONE & KARLBERG P.C.
201 West Main St., Suite 300
Missoula, MT 59807
(406) 543-6646
npjones@boonekarlberg.com

*/s/ Rob Cameron*
Rob Cameron
JACKSON, MURDO & GRANT, P.C.
203 North Ewing
Helena, MT 59601
(406) 389-8244
rcameron@jmgattorneys.com

Ambika Kumar *(pro hac vice)*
Tim Cunningham *(pro hac vice)*
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 330
Seattle, WA 98104-1610
(202) 622-3150
ambikakumar@dwt.com
tcunningham@dwt.com

Alexander A. Berengaut *(pro hac vice)*
Megan A. Crowley *(pro hac vice)*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5367
aberengaut@cov.com
mcrowley@cov.com

*Attorneys for Plaintiffs Samantha Alario, Heather Dirocco, Carly Ann Goddard, Alice Held, and Dale Stout*

*Attorneys for Consolidated Plainitff TikTok Inc.*

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)**

I certify that this brief complies with the 4,500-word limit under the Court's scheduling order dated July 7, 2023.  This computer-generated brief was prepared using Microsoft Word, and based on Microsoft Word's word count function, the total number of words in this brief, excluding caption, tables of contents and authorities, signature block, and certification of compliance is 4,500.

Dated: September 15, 2023                          */s/ Rob Cameron*
                                                    Rob Cameron