Joel L. Thayer*
Thayer, PLLC
1255 Union Street, 7th Floor
Washington, D.C. 20002
Telephone:  (760) 668-0934
Email:  JThayer@thayer.tech
*Admitted *pro hac vice*

Jack G. Connors
DONEY CROWLEY P.C.
P.O. Box 1185
Helena, MT  59624-1185
Telephone:  (406) 443-2211
Facsimile:  (406) 449-8443
Email:  jconnors@doneylaw.com

*Attorneys for Amicus Curiae, Digital Progress Institute*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, et al., <br><br> Plaintiff, <br> TIKTOK INC., <br><br> Consolidated Plaintiff; <br><br><br> vs. <br><br> AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana, <br><br> Defendant. | Lead Case No. <br> CV 23-56-M-DWM <br><br> Member Case No. <br> CV 23-61-M-DWM <br><br> **BRIEF OF *AMICUS CURIAE* FOR THE DIGITAL PROGRESS INSTITUTE** |

## *AMICUS'S* INTEREST IN THIS MATTER

The Institute is a thought leader in the intersection between constitutional fidelity and Internet regulation. Its core mission is to advocate for incremental and bipartisan policies and laws in the technology and telecommunications spaces that promote a holistic approach to Internet regulation and ensure privacy for every consumer. Preventing TikTok from engaging in espionage on behalf of the Chinese Communist Party ("CCP") is fundamental to these stated principles.

The Institute believes that Montana's law at issue meets all of the Institute's metrics of good governance. Montana's law is not only incremental in scope and bipartisan, but it also takes a holistic approach to Internet regulation when addressing cybersecurity and is critical to the promise of privacy for all. Again, these are two foundational principles on which the Institute was built, which further informs the Institute's interest in participating as an *amicus* in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The information wars are upon us and our enemies are leveraging our technology to get the upper hand. If this Court rules in favor of TikTok, it would open the door for known corporate affiliates of the Chinese government—like Huawei, ByteDance, and ZTE—or Russian technology companies to weaponize our Constitution to spy on our population. Because Congress and the several

States must have the ability to protect the American people, denying TikTok's Motion for Preliminary Injunction is in the public interest.

Additionally, neither the First Amendment nor the Bill of Attainder Clause shield TikTok from public scrutiny and legislation.  As for the First Amendment, Montana's law is targeted towards TikTok's conduct, not its or its users' speech. Courts frequently uphold the constitutionality of statutes that ban the operation of communications services, like TikTok, to protect Americans against foreign adversaries—especially so when there are numerous alternative options.

Regarding the bill of attainder claim, the Institute notes two main issues with their argument.  *First*, the Constitution's prohibition on bill of attainders does not prohibit the government from singling out companies in legislation.  *Second*, given that Montana's law only applies to future actions, it falls outside the scope of the type of punishment the prohibition of a bill of attainder seeks to prevent.  Again, the United States has banned foreign communications services in our market without it amounting to a bill of attainder.

Candidly, if this Court agrees with Consolidated Plaintiffs' views on these issues, then it would create an extraordinary cybersecurity loophole.  By extension, such a ruling would create a roadmap for foreign enemies to use when they seek to pilfer sensitive consumer data from our population.  Worse, it would create a

significant roadblock for Congress to write laws to prohibit this type of foreign spying nationally.

Our constitutional fidelity and shared goal of preventing foreign adversaries' peering eyes into our homes, our thoughts, and our everyday lives depend on the Court getting this right.

## ARGUMENT

### I.      Denying TikTok's Motion for Preliminary Relief is in the Public Interest

Consolidated Plaintiffs seek a preliminary injunction on the State's enforcement of S.B. 419.  Doc. No. 11[1] ("TikTok's Motion").  Given that the Court must consider whether "an injunction is in the public interest" before granting TikTok's Motion, *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)), it should take the unique threat TikTok poses to Montana's public safety under serious consideration.  Indeed, the U.S. Supreme Court has made clear that "adverse impact[s]" to public safety are high on the list of public interest considerations in previous cases.  *Winter*, 555 U.S. at 24.  TikTok presents such a risk.

---

[1] All docket citations are to the lead case Alario v Knudsen; 9:23-cv-00056.

TikTok is an online platform that enables users to share and view videos and other forms of content.  Chandlee Decl. ¶ 3, Doc. 14.  So is Facebook.  And Instagram.  And Twitter.  And Snapchat.  And YouTube.  And Pinterest.  And LinkedIn.  And Tumblr.  And WhatsApp.  And Foursquare.  And Reddit.  And Rumble.  And Discord.  And Signal.  And Mastodon.

Thousands, if not millions, of Americans use each of these platforms every month.  On them all, users express their opinions and communicate with others about a wide range of social, political, and business issues.  And each platform claims to have safeguards to protect the privacy and security of U.S. user data.

But of these more than a dozen social media platforms, only one has been repeatedly caught endangering the security of the United States and the State of Montana—and only one is owned by the Chinese company ByteDance.  FBI Director Christopher Wray, for example, has warned that TikTok "is a tool that is ultimately within the control of the Chinese government—and it, to me, screams out with national security concerns."  Michael Martina & Patricia Zengerle, *FBI chief says TikTok 'screams' of US national security concerns*, REUTERS (Mar. 9, 2023), https://bit.ly/45jtX3z.  President Biden's Director of National Intelligence Avril Haines has said that China uses apps (like TikTok) and communication networks to "develop[] frameworks for collecting foreign data and pulling it in . . . to target audiences for information campaigns or for other things."  Andrea

Mitchell Report, *DNI Avril Haines: Parents 'should be' concerned about kids' privacy and data on Tik-Tok*, MSNBC (Dec. 5, 2022), https://on.msnbc.com/3OWZn97.

TikTok's promises of protecting the privacy and security of American data have proven hollow.  Leaked audio from internal TikTok meetings shows that, at least through January 2022, engineers in China had access to U.S. data.  Emily Baker-White, *Leaked Audio from 80 Internal TikTok Meetings Shows that US User Data Has Been Repeatedly Accessed From China*, BUZZFEEDNEWS (June 17, 2022), https://bit.ly/3QXXf3n.  "Everything is seen in China," said one member of TikTok's Trust and Safety team.  *Id.*  And eight different U.S. employees explained having to repeatedly turn to Chinese colleagues because U.S. staff "did not have permission or knowledge of how to access the data on their own."  *Id.*  Meanwhile, TikTok's parent ByteDance has admitted to tracking at least two U.S.-based journalists, Clare Duffy, *TikTok confirms that journalists data was accessed by employees of its parent company*, CNN (Dec. 22, 2022), https://cnn.it/3KYVYFB, and reports show that ByteDance had in fact intended to use TikTok to monitor specific American citizens, Emily Baker-White, *TikTok Parent ByteDance Planned To Use TikTok To Monitor The Physical Location Of Specific American Citizens*, FORBES (Oct. 20, 2022), https://bit.ly/44sSvWw.  The U.S. Department of Justice is investigating this spying.  Alexander Mallin & Luke Barr, *DOJ investigating*

*TikTok owners for possible surveillance of US journalists: Sources*, ABC NEWS (Mar. 17, 2023), https://abcn.ws/47Pr2Bm.

These revelations are unsurprising to those who understand the intimate relationship between the Chinese government and large Chinese companies like ByteDance.  To ensure alignment with Beijing's policies, ByteDance has had an internal party committee as part of its governance structure since 2017.  Yaqiu Wang, *Targeting TikTok's privacy alone misses a larger issue: Chinese state control*, HUMAN RIGHTS WATCH (Jan. 24, 2020), https://bit.ly/3EgQXEA.  And TikTok CEO Shou Zi Chew, who promised to localize all U.S. user data, served as ByteDance's CFO for most of 2021 and before that was president of international operations for Xiaomi Technology, a software developer the Pentagon considers a "Communist Chinese military company."  Jerry Dunleavy, *TikTok CEO's Chinese government ties in spotlight ahead of Capitol Hill testimony*, WASHINGTON EXAMINER (Mar. 23, 2023), https://bit.ly/44ovQuA.

Against this background, the Montana legislature adopted, and the governor signed S.B. 419.  In pertinent part, that legislation noted that "the People's Republic of China is an adversary of the United States and Montana," "the People's Republic of China exercises control and oversight over ByteDance," and "TikTok is a wholly owned subsidiary of ByteDance."  S.B. 419 Preamble.  It then found that "TikTok's stealing of information and data from users and its ability to

share that data with the Chinese Communist Party unacceptably infringes on Montana's right to privacy" and that its "continued operation in Montana serves as a valuable tool to the People's Republic of China to conduct corporate and international espionage in Montana and may allow the People's Republic of China to track the real-time locations of public officials, journalists, and other individuals." *Id.*

Accordingly, S.B. 419 prohibited the TikTok social networking service from "operat[ing] within the territorial jurisdiction of Montana," *id.* § 1(1), authorized monetary penalties to enforce that measure, *id.* § 1(2), made clear those penalties would not apply to users, *id.* § 1(5), and made clear that the entire Act would become void if ByteDance divested itself of TikTok (so long as the acquirer is not based in a foreign adversary country), *id.* § 4.

If this Court grants TikTok's request for preliminary relief, it allows the company to continue to harm consumers and feed more information to the CCP. Indeed, granting TikTok's Motion only serves to allow foreign adversaries to keep their peering eyes into Montanans' homes, thoughts, and everyday lives long after the law goes into effect on January 1, 2024.  Thus, the public interest is better served with the Court denying TikTok's Motion.

## II.    The First Amendment Does Not Bar Conduct-Based Regulation Designed to Protect the Security Interests of Citizens of the United States and the Several States

Montana's S.B. 419 regulates conduct, not speech.  It prohibits one of a more than a dozen social-media networking apps from "operat[ing] within . . . Montana."  S.B. 4.19 § 1(1).  It does not prohibit TikTok from speaking.  It does not prohibit TikTok from publishing its views.  And it does not prohibit TikTok from disseminating their views through one of the more than a dozen social-media networking apps or the literally thousands of websites that will remain available in Montana after S.B. 419 takes effect.  Nor does the law prohibit TikTok's current users from doing any of these things.

In a similar vein, the law does not regulate the content of the TikTok platform or the content it hosts.  Montana's law treats all content the same and does not favor any user content over another.  Montana's law does not prevent users from posting the same content on any other social media platform; users are still free to do so after the law goes into effect.  The law brooks no exception for certain types of favored speech nor harsher treatment for disfavored speech—nor for any favored or disfavored speaker.  S.B. 419 draws no such distinctions at all.

Indeed, the only distinction found in the law is the one drawing a line between TikTok on the one hand and other social-media networking platforms on the other—and the legislation makes clear why that line has been drawn: to protect

the security of Montanans from the conduct of TikTok's owner, ByteDance.  And the factual predicate of that distinction is clear; as shown in numerous articles, the legislative history, and the substance of the legislation itself, the threat that ByteDance's control of TikTok poses to the security and privacy interests of Montanans (and all Americans) is undeniable.  The Montana legislature has a compelling interest in protecting the security and privacy of its citizens.  And the legislature exercised that prerogative by regulating the conduct of TikTok, not its speech, and carved out a path forward for TikTok to ameliorate the legislature's concerns:  The law makes clear that TikTok can operate in the state of Montana (with all of the same content as before) if it cuts ties with ByteDance.  S.B. 419 § 4.

The First Amendment poses no bar to such regulation.  Courts have consistently distinguished between conduct and speech in applying the First Amendment.  In *Arcara v. Cloud Books, Inc.*, for example, the New York state government shut down an adult bookstore for health violations because its owner used his store to facilitate prostitution.  478 U.S. 697 (1986).  Even though we think of a bookstore as a quintessential venue for First Amendment activity, the Supreme Court ruled that the First Amendment did not prevent the government from shutting down the bookstore because the government was acting based on the owner's decision to engage in prohibited, non-speech conduct.  *Id.* at 707.

As Justice Burger explained:

The legislation providing the closure sanction was directed at unlawful conduct having nothing to do with books or other expressive activity.  Bookselling in an establishment used for prostitution does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises.

*Id*.  So too here.  It's clear Montana's legislature is targeting TikTok's conduct.  Specifically, the law takes issues with TikTok's "stealing of information and data from users" to share with ByteDance and the Chinese government, "corporate and international espionage in Montana," and "to track the real-time locations of public officials, journalists, and other individuals."  S.B. 419 Preamble.  Montana's legislature makes this intent even clearer through S.B. 419's "Contingent voidness" provision that "void[s the law] if TikTok is acquired by or sold to a company that is not incorporated in any other country designated as a foreign adversary . . . ."  S.B. 419 § 4.

Notably, Montana is not the first to take action against a Chinese-based communications platform.  For example, Congress passed the Secure and Trusted Communications Network Act of 2019, which directed the Federal Communications Commission to remove equipment associated with national security threats from American networks.  Pub. Law No. 116-124.  Accordingly, the Commission relied on the views of national security experts and banned Huawei from selling any more telecommunications equipment to rural customers

that rely on federal subsidies.  In a similar vein, the Commission has revoked the ability of Chinese-affiliated carriers China Telecom, ComNet, and Pacific Networks from interconnecting with American telecommunications networks and operating in the United States.

The courts have blessed these prohibitions.  The Fifth Circuit turned aside Huawei's federal-law and constitutional challenges.  *See Huawei Technologies USA v. FCC*, 2 F.4th 421 (5th Cir. 2021).  The D.C. Circuit upheld the revocations of China Telecom, ComNet, and Pacific Networks without a scintilla of concern towards a First Amendment violation.  *See China Telecom (Americas) Corp. v. F.C.C.*, 57 F.4th 256 (D.C. Cir. 2022); *Pacific Networks Corp., et al. v. F.C.C.*, Dkt No. 22-1054 (D.C. Cir. 2023).

These cases are all in line with precedent that distinguishes between regulations that target the conduct of "conduit for the speech of others" and speakers themselves.  *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 629 (1994).  Courts traditionally view the speech the conduit hosts as being analytically immaterial to the government's regulation of the conduit's conduct— and have upheld regulations that target a conduit's conduct.  *See Turner*, 512 U.S. at 656, 667.  The D.C. Circuit used that same rationale in reviewing the FCC's Open Internet Order and upholding it against First Amendment scrutiny.  *U.S. Telecom v. F.C.C.*, 855 F.3d 381, 389 (2017).

That same line of cases applies here.  Like the FCC, the Montana legislature has heeded the concerns of FBI Director Christopher Wray and Director of National Intelligence Avril Haines to protect the security of its citizens.  Like the FCC, the Montana legislature targeted the wrongful conduct of one actor, found its ties with China raised irreparable issues, and prohibit that provider from taking certain actions.  Like Huawei and China Telecom and ComNet and Pacific Networks, TikTok is affiliated with a Chinese company with close ties to the Chinese government and a history of improperly sharing information about American citizens with the Chinese.  And like each of these prohibited companies, TikTok is merely one among many platforms for the speech of others.

Consolidated Plaintiff's arguments to the contrary are all unavailing.  *First*, TikTok claims the law is subject to strict scrutiny because it is "content and viewpoint-based," pointing to non-operative language in the bill's preamble regarding TikTok's "alleged promotion or toleration of videos uploaded by users depicting dangerous activities" and snippets of legislative history.  Brief in Support of Consolidated Plaintiff's Motion for Preliminary Injunction, Doc. 12, at 7 ("TikTok's Brief") (citing S.B. 419 Preamble & Judiciary Comm. Tr.).  The problem for TikTok is that this language is *not operative*; the substance of the bill itself does not single out or treat any content or viewpoint any differently from any other content or viewpoint, and TikTok would be free to display the exact same

content (and viewpoint) if it severed its ties with ByteDance.  As the U.S. Supreme Court recently held, a law or action is viewpoint neutral if it does "not discriminate on the basis of particular views" and treats all content the same.  *City of Austin, Texas v. Reagan National Advertising of Austin, LLC*, 142 S.Ct. 1464, 1466-67 (2022).

*Next*, TikTok claims that the law imposes a "prior restraint" by "prohibiting all users—including TikTok Inc.—from communicating with users in Montana, and prohibiting users in Montana from communicating with anyone else on TikTok."  TikTok's Brief at 8.  Again, not so.  TikTok has public profiles on every major social media platform where it shares its users' content.  *E.g.*, TikTok Page, Facebook (last visited Sep. 1, 2023), https://www.facebook.com/tiktok.  It is free to communicate with the people of Montana through literally hundreds of different platforms after S.B. 419 takes effect, and current TikTok users can continue to communicate with anyone in America through more than a dozen social-media platforms let alone innumerable alternative communications channels.  So too can Montanans (even those that use TikTok now) continue to communicate with each other once the prohibition on TikTok takes effect.  And to make that point even more clear, S.B. 419 exempts any users from being penalized if they continue to use TikTok after the prohibition takes effect—hardly an effective means of restraining their speech.

*Then*, TikTok claims that the law violates the First Amendment because it "'foreclose[s] an entire medium of expression.'"  TikTok's Brief at 14 (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994)).  While that might be true if Montana banned *all* social-networking platforms or some other "entire medium"— as the City of Ladue did in banning practically all residential signs—that's not what S.B. 419 does at all.  That law leaves alone the more than a dozen alternatives to TikTok now present and popular in the United States and targets the one—the only one—with ties to a Chinese company that has admitted to spying on American journalists.  And even that one platform can operate in Montana if it severs its ties with ByteDance.

In the same vein, TikTok complains that the ban "does not leave open ample alternative channels of communications" because only through the TikTok app can TikTok reach its "intended audience."  TikTok's Brief at 15.  Balderdash.  S.B. 419 gave TikTok ample time to establish other means of communicating with current TikTok users via text or email or videoconferencing or on YouTube or Facebook or Instagram or any of the hundreds of other options.  And TikTok can contribute to distribute "curated content" through the state—it just cannot do it via the operation of its app.

In short, TikTok's arguments appear to suggest that TikTok is a one of a kind, unique platform.  And it certainly is.  It's the one major social-networking platform in the United States owned by ByteDance.  And it's the only one the Chinese have used to track Americans.  That means the many other social-networking platforms are superior replacements, not just adequate.

*To the extent* that TikTok is arguing that the speech of its users is akin to its own, TikTok's Brief at 15-16, federal law is not on its side.  As explained above, when courts have reviewed bans of foreign-affiliated communications equipment providers and telecommunications carriers, they have distinguished these distributors from content providers like a newspaper or speaker.  A newspaper "affirmatively chooses to publish something," *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 459 (5th Cir. 2022), TikTok does not.  Its own terms of service make clear that it does not have that level of control over the content it hosts, TikTok, *Terms of Service*, Website (last visited Sep. 1, 2023), https://www.tiktok.com/legal/page/us/terms-of-service/en; indeed, TikTok admits as much when describing itself as an "online platform," TikTok's Brief at 1, not a content provider.

And federal law agrees:  As the provider of an "interactive computer service," TikTok shall not "be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C.

§ 230(c)(1).  TikTok has argued as much in court before (likely repeatedly), *see, e.g.*, *Anderson v. TikTok, Inc.*, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) (TikTok invoking that paragraph to shield it from liability for the death of a young girl as a result of TikTok's "blackout challenge"), and should be held to the consequences of those same arguments herein.

* * *

In short, the First Amendment poses no bar to the implementation of S.B. 419.  And finding otherwise would not only overturn decades of precedents, but it would handcuff the ability of Congress and the several States to reign in large technology platforms that spy on the American people—hardly a result the framers of our Constitution would have envisioned.

## III.    The State's Law Does Not Amount to a Bill of Attainder

The Bill of Attainder Clause, Article I, Section 9, Clause 3 of the Constitution, prohibits a legislative act which inflicts punishment without a judicial trial.  But "it does not do so by limiting Congress to the choice of legislating for the universe, or legislating only benefits, or not legislating at all."  *Nixon v. Adm'r of General Services*, 433 U.S. 425, 428 (1977).  Rather, Congress (and the Several States) may legislate even when only a single individual or company is the subject of the legislation.

The Constitution requires more than specificity, it also requires a retroactive punishment.  In *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, the Supreme Court laid out a three-part test to determine whether legislative action constitutes a punishment rather than a mere burden.  468 U.S. 841 (1984).  The historical test asks "whether the challenged statute falls within the historical meaning of legislative punishment."  *Id.* at 852.  The functional test asks whether the statute "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes."  *Id.*  And the motivational tests asks whether the legislative record "evinces a congressional intent to punish."  *Id.*  A successful claim requires that all three tests be met.  *Id.*

Huawei is again the most direct precedent.  When the 2019 National Defense Authorization Act named Huawei and prohibited the government from buying its equipment, Huawei sued the United States under the same theory as Plaintiffs here.  The District Court disagreed.  *Huawei Tech. U.S.A., Inc.*, *et al. v. U.S.*, 440 F.Supp.3d 607 (E.D. Tex. 2020).  The District Court held that Congress's actions against Huawei were lawful because it was not denying Huawei a trial for past offenses.  *Id.* at 637.  Instead, the NDAA applied to transactions that have not yet occurred and thus fell outside the scope of the type of punishment considered to be a bill of attainder.

This is where Plaintiffs' argument falls apart.  S.B. 419 pertains to future transactions, not transactions that have already occurred.  The Montana legislature did not impose or demand any recompense for TikTok's past wrongs—it only prohibited TikTok from continuing to operate its app in the State starting next year if it continued to pose a threat by maintaining its relationship with ByteDance.

Compare this to the facts in *Lovett* where Congress prohibited paying the salaries for a few dozen federal employees via the Urgent Deficiency Appropriation Act of 1943 because Congress thought their affiliation with the Communist Party violated federal law.  328 U.S. 303, 306 (1946).  The Supreme Court held, in doing so, Congress was playing the role of a court and, hence, punished the past conduct of employees without a trial.  *Id.* at 315-16.

Again, the Bill of Attainder Clause poses no barrier to the implementation of S.B. 419.  Instead, the Constitution gives Congress and the several States broad flexibility to craft legislation to thwart the attempts of foreign governments to use technology to spy on Americans.

## CONCLUSION

For all of the foregoing reasons, the Court should deny TikTok's Motion for preliminary relief.

Dated: September 18th, 2023

THAYER PLLC


/s/ Joel L. Thayer
_____

Joel L. Thayer
1255 Union Street, 7th Floor
Washington, D.C. 20002
JThayer@thayer.tech
(760) 668-0934

DONEY CROWLEY P.C.


/s/ Jack G. Connors
_____

Jack G. Connors
P.O. Box 1185
Helena, MT  59624-1185
Telephone:  (406) 443-2211
Facsimile:  (406) 449-8443
Email:  jconnors@doneylaw.com

*Attorneys for Proposed Amicus Curiae,*
*Digital Progress Institute*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d), I certify that Brief of Amicus Curiae for the Digital Progress Institute is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count is 3997 words, excluding the caption, signature block and Certificate of Compliance.

DATED this 18th day of September, 2023.

/s/ Jack G. Connors

_____

Jack G. Connors