AUSTIN KNUDSEN
Montana Attorney General
CHRISTIAN B. CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Attorneys for Defendants*

TYLER GREEN*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
Phone: 703-243-9423
tyler@consovoymccarthy.com
 *Admitted *pro hac vice*

KATHLEEN L. SMITHGALL
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Phone: 703-243-9423
katie@consovoymccarthy.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, ET AL., <br><br> *Plaintiffs,* <br><br> and <br><br> TIKTOK, INC., <br><br> *Consolidated Plaintiff,* <br><br> v. <br><br> AUSTIN KNUDSEN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MONTANA, <br><br> *Defendant.* | Lead Case No. CV-23-56-M-DWM <br><br> Member Case No. CV 23-61-M-DWM <br><br> **DEFENDANT'S DISCOVERY PROPOSAL** |

In accordance with this Court's February 5, 2024, Order, Defendant Austin Knudsen, on behalf of the State of Montana, submits this detailed accounting of discovery it seeks from TikTok, the Individual Plaintiffs, and non-party ByteDance Ltd.

## BACKGROUND

TikTok Inc. and a group of individual plaintiffs each filed a lawsuit challenging Montana Senate Bill 419. Collectively, they assert that SB419 violates the First Amendment, the Due Process Clause, the Supremacy Clause, the Commerce Clause, and the prohibition against Bills of Attainder. Although this Court consolidated the two cases, noting the overlapping issues raised in each Complaint, TikTok and the Individual Plaintiffs each present a unique set of facts relevant to their respective claims. Unlike TikTok—a large, international corporation—Individual Plaintiffs are just that: individual persons who are both users and creators on the TikTok app.

In an effort to obtain discovery related to some of the State's data-privacy concerns, before the preliminary injunction hearing the State served on TikTok 14 Interrogatories, 2 Requests for Production, and 6

Requests for Admission. The State did not serve any discovery on Individual Plaintiffs. In its responses, TikTok raised a litany of objections, evading many of the interrogatories and requests, and providing a narrow set of documents, which the State accessed and reviewed.[1] Given the preliminary injunction briefing schedule, the State did not have adequate time to raise (nor would this Court have had adequate time to resolve) objections to TikTok's responses. But the State has made clear throughout these proceedings that it will meet and confer with TikTok regarding these objections and responses when regular discovery starts.

In light of this Court's preliminary injunction order and the allegations set forth in both Complaints, the State is entitled to additional discovery. Once this Court permits the parties to move forward with discovery, the State intends to meet and confer with TikTok regarding its initial

---

[1] When the parties met and conferred about the Rule 26(f) report, which they filed with this Court on January 16, 2024, TikTok asserted that it had no record of the State accessing or downloading the document production. The State did, in fact, access and download the document production on or around July 24, 2023, shortly after TikTok served its discovery responses and objections. That TikTok could not even verify who had accessed their confidential, electronic data in a case where the State's merits arguments rest in large part on Montana lawmakers' concern over TikTok's inability to verify who has accessed its citizens' electronic data is not just the definition of irony—it confirms precisely why ordinary discovery under Rule 26 is necessary.

discovery responses and objections. *See* ECF 126. In addition, the State intends to serve additional discovery requests on TikTok, Individual Plaintiffs, and ByteDance Ltd.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b) permits obtaining "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." The Rules also specifically instruct courts to consider the "parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). While this Court retains discretion to limit discovery in certain circumstances, courts recognize that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). In line with this presumption of liberal discovery, a party opposing discovery carries a "heavy burden" of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *accord Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1134 (D. Mont. 2016). Given the factual disputes in this litigation, discovery is warranted.

ARGUMENT

## I.   The State Seeks Discovery from Individual Plaintiffs.

The State intends to seek discovery from Samantha Alario, Heather DiRocco, Carly Ann Goddard, Alice Held, and Dale Stout, into facts relevant to Individual Plaintiffs' First Amendment, Due Process, and Commerce Clause claims.

### A.   Individual Plaintiffs' First Amendment Claim.

With respect to the First Amendment claim, this Court evaluated SB419 under intermediate scrutiny, which considers the burdens imposed by the challenged law and whether ample alternative channels of communication exist. Order, at 22. Whether a restriction leaves open sufficient alternative channels of communication is a factual question. *See, e.g.,* W*ard v. Rock Against Racism,* 491 U.S. 781, 802 (1989) (relying on extensive district court record, including 5-day trial); *Pouillon v. City of Owosso*, 206 F.3d 711, 717-18 (6th Cir. 2000); *Marcavage v. City of Phila.,* 271 Fed. App'x 272, 275 (3d. Cir. 2008); *Pindak v. Dart*, 2011 WL 4337017, at *6 (N.D. Ill. Sept. 14, 2011); *Giggles World Corp. v. Town of Wappinger*, 341 F. Supp. 2d 427, 432 (S.D.N.Y. Oct. 5, 2004). Individual

Plaintiffs have asserted that TikTok is different from other platforms, Compl. ¶21, and that TikTok is a "driving factor in their success," Compl. ¶41. The State intends to seek information from each of the Individual Plaintiffs about their use of TikTok, the content they create on TikTok, income earned on TikTok, and the availability of other social media or online platforms to produce, distribute, or monetize their content. This information is necessary with respect to the question of whether there exist ample alternative channels of communication.

Discovery on these issues is not foreclosed by the holdings in *IMDb.com, Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020), and *IMDb.com, Inc. v. Becerra*, 257 F. Supp.3d 1099 (N.D. Cal. 2017). Unlike SB419—which this Court subjected to intermediate scrutiny—the California law at issue in *IMDb.com* was expressly content-based and therefore subject to strict scrutiny. 962 F.3d at 1120. And California's discovery requests would not have yielded facts showing that the challenged law was "the least restrictive means to accomplish its goal." *Id.* at 1128. Here, in contrast, the information the State seeks in discovery speaks directly to the relevant First Amendment inquiries—what burdens SB419 places on

Plaintiffs and whether ample alternative channels of communication remain open to them.

**B.   Individual Plaintiffs' Due Process Claim.**

Individual Plaintiffs did not seek a preliminary injunction based on their Due Process claim, but regardless of their likelihood of success on this claim, it likewise raises important factual questions. For example, Individual Plaintiffs assert that "SB 419 deprives Plaintiffs of their property rights … including their followers and the revenues they derive" from TikTok. Compl. ¶97. They further assert that SB419 deprives Individual Plaintiffs of "liberty to obtain information through TikTok's communication service" and "to pursue their chosen occupation." Compl. ¶¶99-101. As stated above, the State intends to seek information about Individual Plaintiffs' use of TikTok, the content they create on TikTok, their income earned on TikTok, and other details related to their "chosen occupation." This information is directly relevant to Individual Plaintiffs' Due Process claim for reasons they state in their own Complaint.

**C.   Individual Plaintiffs' Commerce Clause Claim.**

With respect to Individual Plaintiffs' Commerce Clause claim, this Court held that it must weigh the burdens imposed on commerce against

the putative local benefits. Order, at 44 (citing *Pike v. Bruce Church,* 397 U.S. 137, 142 (1970)). Specifically, this Court credited Plaintiffs' allegations that SB419 imposes a burden that outweighs the benefits pressed by the State. *Id.* To properly defend against this claim, the State needs from each of the Individual Plaintiffs facts about how SB419 imposes a burden. This information includes how they use TikTok, the content they create on TikTok, how they monetize TikTok, and the burden on "the flow of online service across state lines." Compl. ¶39. Again, this information is necessary to identify the specific burdens imposed on Individual Plaintiffs as alleged in their Complaint.

***

For these reasons, the State intends to seek necessary discovery from each of the Individual Plaintiffs on their First Amendment, Due Process, and Commerce Clause claims. As explained above, the information sought for each of these three claims largely overlaps, and the State will seek this information through depositions of each Plaintiff, requests for admission, and requests for documents related to each of the topics identified above.

## II.    The State Seeks Discovery from TikTok and Non-Party ByteDance Ltd.

The State also will seek information from TikTok and ByteDance Ltd.[2] relevant to TikTok's First Amendment, Preemption, and Commerce Clause claims.

### A.    TikTok's First Amendment Claim.

As explained above, this Court evaluated SB419 under intermediate scrutiny, which considers the burdens on speech and whether the law "advance[s] important governmental interests" and is narrowly tailored. Order, at 22. In this case, these questions turn on the facts. *See id.* at 26 (noting that at the preliminary injunction stage, "the State has not demonstrated the Legislature's consumer protection interest in passing the bill"); *id.* at 27 (finding the State's proffered evidence unpersuasive); *id.* at 28 (noting that at the preliminary injunction stage, "the State has not provided any evidence that the ban" will address the harms). The

---

[2] The State acknowledges that ByteDance Ltd. is not a party to this litigation. But the State intends to use the third-party discovery process to obtain documents necessary to this litigation that may be outside the possession or control of TikTok. *See* Fed. R. Civ. P. 45.

State seeks two categories of information. First, the State seeks information from ByteDance Ltd. and TikTok about ByteDance's subsidiaries and the data-sharing and data-access agreements among the subsidiaries, including TikTok. Second, the State seeks information from TikTok about its beneficial owners and TikTok's data-gathering, data-storage, data-security, and data-access processes and procedures. This information goes to the State's interest in protecting consumer data as well as the need for a total ban of TikTok under SB419.

Courts routinely consider evidence showing a state or government entity's interest in and rationale for the law. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (the court must determine whether the government's evidence "demonstrate[s] that the recited harms are real"); *Alameda Books, Inc. v. City of L.A.,* 631 F.3d 1031, 1042 (9th Cir. 2011); *Green Party of Conn. v. Garfield*, 616 F.3d 189, 200 (2d Cir. 2010) (concluding there were "'sufficiently important; government interests" based on "sufficient evidence in the record"); *Ware v. La. Dep't of Corrections*, 866 F.3d 263, 270 (5th Cir. 2017) (relying on evidence to determine

whether the State showed a "compelling interest" under strict scrutiny); *Thompson v. Miss. Dep't of Corrections*, 2017 WL 3584919, at \*6 (N.D. Miss. Aug. 18, 2017) (same); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 50 F. Supp. 2d 741 (S.D. Ohio 1999) (same); *Drake v. Filko*, 724 F.3d 426, 437-39 (3d Cir. 2013), *abrogated by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022). In briefing, the State provided a significant number of newspaper articles, reports, congressional statements, congressional hearings, and state investigations describing the ways that ByteDance and the Chinese Communist Party have access to TikTok's user data and information. *See* ECF 53 at 3-6. The State maintains that this widespread reporting and publicly available information is sufficient to establish the State's interest in protecting Montana consumers. *See City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425 (2002) (permitting the City to "reasonably rely" on a single study from a department conducted years before the law was enacted); *see also, e.g.*, *Repub. Party of New Mexico v. Torrez*, –F. Supp. 3d –, 2023 WL 5310645 (D. New Mexico Aug. 17, 2023) (permitting the State to rely on a "mountain of newspaper articles" to justify the challenged law). But this Court found that because the State failed to provide "affidavits or additional evidence," the

State failed to meet its evidentiary burden. Order, at 22. Now, through discovery, the State seeks to meet that burden.

To show that this widespread reporting raises real and pressing concerns justifying SB419, the State has sought and will continue to seek information from TikTok and ByteDance regarding the claims made therein because of "the parties' relative access to information." Fed. R. Civ. P. 26(b)(1). Much of the information underlying those public reports is unavailable to the State. With respect to the newspaper articles and public reporting, the State cannot require reporters to reveal confidential sources. *Branzburg v. Hayes*, 408 U.S. 665, 680 (1972). With respect to the congressional testimony, the State has access only to what is publicly available, which the State relied on both in developing SB419 and in the preliminary injunction briefing in this litigation. *See, e.g.*, ECF 53, at 4-6. And while Montana is a party to multistate litigation, any information the attorneys involved in that litigation might have obtained via that investigation is subject to a confidentiality agreement. Moreover, based on the undersigned attorneys' understanding, TikTok has failed to provide responsive documents to most, if not all, CIDs issued in that litigation.

In short, the only entities that possess the information the State needs to meet the evidentiary standard set forth in this Court's preliminary injunction order are TikTok and ByteDance Ltd. *See* Fed. R. Civ. P. 26(b)(1) (discovery must take into account "the parties' relative access to relevant information").

Specifically, the State seeks the identity of ByteDance Ltd.'s subsidiaries and the data-sharing or data-access agreements between those entities over time. This will assist the State with identifying how user and creator data has been and can be accessed by non-TikTok entities or individuals. The historical data is necessary because TikTok has not been forthcoming about whether or how or when it intends to dispose of or protect already-collected data from users and creators. Identifying who historically has had access to this data and who presently has access to this data is a critical part of Montana's consumer protection interest in SB419.

In addition, the State seeks information about the beneficial owners of ByteDance Ltd. and any data sharing or data access agreements between those entities and individuals over time. As stated above, this

information is necessary to identify who historically has had or presently has access to TikTok user and creator data.

Next, the State seeks information about current and former data-gathering, data-storage, data-security, and data-access processes and procedures. *See* TikTok Compl. ¶¶4, 66 (alleging the company has taken "substantial measures" to protect data privacy and security). Each of these topics relates to the widespread reporting on TikTok's data

practices, which the State relied on, in part, to develop SB419.[3] *See Alameda Books, Inc.*, 535 U.S. at 425 (permitting the City to "reasonably rely" on a single study from a department conducted years before the law

---

[3] *See* Richard Nieva, *TikTok's In-App Browser Includes Code That Can Monitor Your Keystrokes, Researcher Says*, Forbes (Aug. 18, 2022), perma.cc/M578-4X29; Emily Baker-White, *Exclusive: TikTok Spied on Forbes Journalists*, Forbes (Dec. 22, 2022), perma.cc/8HSX-R74Q; David Shepardson, *ByteDance finds employees obtained TikTok user data of two journalists*, Reuters (Dec. 22, 2022), perma.cc/YH2U-RLA8; Ashley Gold, *Exclusive: Senator's TikTok whistleblower alleges data abuses*, Axios (Mar. 8, 2023), https://www.axios.com/2023/03/08/senators-tiktok-whistleblower-alleges-data-abuses; Drew Harwell, *A former TikTok employee tells Congress the app is lying Chinese spying*, The Washington Post (Mar. 10, 2023), perma.cc/997H-9GLY; Thomas Fuller & Sapna Maheshwari*, Ex-ByteDance Executive Accuses Company of 'Lawlessness*," N.Y. Times (May 12, 2023), perma.cc/DE96-KD7G. Sapna Maheshwari & Ryan Mac, *Driver's Licenses, Addresses, Photos: Inside How TikTok Shares User Data*, The New York Times (May 24, 2023), perma.cc/2KBM-WSAZ; Zen Soo, *Former exec at TikTok's parent company says Communist Party members had a 'god credential' that let them access Americans' data*, Business Insider (June 7, 2023), perma.cc/5QXY-5GBE; Letter from TikTok Inc. to Senators Blumenthal and Blackburn (June 16, 2023), perma.cc/4WXM-VR24; TikTok: How Congress Can Safeguard American Data Privacy and Protect Children from Online Harms, House Energy & Commerce, 118th Congress (Mar. 23, 2023), perma.cc/JTE9-5GLK; *Biden signs TikTok ban for government devices, setting up a chaotic 2023 for the app*, NBCNews (Dec. 30, 2022), perma.cc/4J7S-LGQS; *Deputy attorney general warns against using TikTok, citing data privacy*, ABCNews (Feb. 16, 2023), perma.cc/GKK7-BX9D; Press Release, Senator Ed Markey, *Amid Calls to Ban TikTok, Senator Markey Calls for Immediate Action on Privacy Protections for Children and Teens Online* (Mar. 22, 2023), https://perma.cc/QTR7-HTGU; David Shepardson, *State AGs demand TikTok comply with US consumer protection investigations*, Reuters (Mar. 6, 2023), perma.cc/9NL6-2VPW.

was enacted); *see also, e.g.*, *Repub. Party of New Mexico v. Torrez*, –F. Supp. 3d –, 2023 WL 5310645 (D.N.M. Aug. 17, 2023). Specifically, the State seeks historical and present written policies and procedures related to TikTok's data gathering, data storage, data security, and data access. The State also seeks information about whether there exist any exceptions—in writing or in practice—to those written policies. And the State seeks information about policy enforcement related to each topic as well as TikTok's internal controls to ensure compliance with these policies. Again, this information goes directly to the State's interest in protecting consumer data.

Relatedly, the State seeks information about TikTok's use of user and creator data, including how it recommends content through its algorithm based on this collected data. For example, TikTok itself alleges that it enforces its Community Guidelines, including that it provides age-appropriate content through this algorithm. TikTok Compl. ¶36. The State seeks information on how TikTok determines what is "age appropriate" and what data it collects, maintains, and uses to make recommendations for content. Again, this information goes directly to the State's interest in protecting its consumers.

Because the State, under intermediate scrutiny, must show an important governmental interest, the State is entitled to discovery that will support its stated interest of protecting Montana consumers. Because TikTok, and to some extent ByteDance Ltd., are the only custodians of this information, discovery from these entities is appropriate. The State anticipates serving on TikTok additional requests for production, interrogatories, and requests for admission. The State also anticipates serving discovery on ByteDance Ltd. The State further anticipates taking depositions related to these requests, including but not limited to a Rule 30(b)(6) deposition of a TikTok representative who has knowledge about TikTok's data privacy practices and policies, along with Blake Chandlee, President of Global Business Solutions for TikTok, who provided a sworn declaration about TikTok's data practices.

**B.    TikTok's Defense Production Act Preemption Claim.**

Plaintiffs assert two theories of preemption: foreign affairs and conflict preemption. With respect to conflict preemption, Plaintiffs claim SB419 conflicts with both the Defense Production Act and the Economic

Powers Act. Because this Court held that Plaintiffs are unlikely to succeed on their IEEPA theory of conflict preemption, the State will focus discovery on Plaintiffs' DPA theory of conflict preemption.

Conflict preemption differs from field preemption. Whereas field preemption involves a law that displaces "*all* state law in a particular area," conflict preemption requires the showing of an "actual conflict." *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 884 (2000). Because Plaintiffs bring a conflict preemption claim, they must show that SB419 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or where "compliance with both federal and state regulations is a physical impossibility." *Fla. Lime & Avocado Growers, Inc. v.* Paul, 373 U.S. 132, 142-43 (1963).

As explained in the State's brief in opposition to the preliminary injunction motion, "Plaintiffs fail to articulate their precise theory of conflict preemption under DPA." ECF 53, at 32. The DPA vests power in CFIUS to review only "covered transactions," meaning Plaintiffs must identify a "covered transaction" to trigger the application of the DPA. ECF 53, at 32-33. Plaintiffs assert that CFIUS has been exercising its

power to review a transaction "for nearly three years" and that SB419 conflicts with this exercise of authority. TikTok Compl. ¶112; Indiv. Pl. Compl. ¶125.

The State maintains that Plaintiffs identify no "covered transaction" here that would lead to a conflict between CFIUS's ongoing investigation and SB419. *See* ECF 53, at 31-33. But putting that aside, these ongoing negotiations are under seal, so it is not possible to determine whether there is an "actual conflict." *Geier*, 529 U.S. at 884. And according to the limited public record, TikTok has asserted that the "covered transaction" at issue in those negotiations "d[oes] *not* include the core technology or other aspects of the TikTok business." *TikTok Inc. v. CFIUS,* No. 20-1444, Doc. #1870778, at *2-3 (D.C. Cir. Nov. 10, 2020) (emphasis added). Because TikTok's own words in that ongoing litigation suggest no conflict exists between the covered transaction and "TikTok['s] business," the State is entitled to discovery to understand the precise nature of this purported conflict.

Conflict preemption often involves a factual record. *See, e.g., The Co. Anti-Discrim. Comm'n v. Cont. Air Lines, Inc.*, 372 U.S. 714, 719 (1963) ("The line separating the powers of a State from the exclusive

power of Congress is not always distinctly marked; courts must examine closely the facts of each case to determine whether the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers."); *Fl. Lime & Avocado Growers*, 373 U.S. at 143 (basing conflict preemption holding based on the extensive evidentiary record); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1157 (N.D. Cal. 2002) ("[I]t is difficult to resolve the preemption issue without discovery and a clear understanding of what the facts actually are."); *Seufert v. Merck Sharp & Dohme Corp.*, 187 F. Supp. 3d 1163, 1166 (S.D. Cal. 2016). The State seeks information from TikTok about the ongoing investigation with CFIUS. This includes information about the scope of the investigation and whether the ongoing investigation extends beyond ByteDance and Music.ly. It also includes information about whether data privacy is at issue in that investigation and information about what protective measures TikTok has taken in direct response to these negotiations. Because conflict preemption claims fail unless they involve an actual conflict, *Geier*, 529 U.S. at 884, and not just a general claim that federal law occupies an entire area of activity, the State is entitled to

discovery to show that no such conflict exists. This Court and the State are not required to take Plaintiffs at their word that the ongoing negotiations create a true conflict that overcomes the "assumption that the historic police powers of the States were not to be superseded." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009).

The State anticipates serving on TikTok additional requests for production, interrogatories, and requests for admission about the scope of the ongoing investigation.

## C.    TikTok's Commerce Clause Claim.

Finally, as explained above, this Court concluded that the State failed to provide "any evidentiary support for [SB419's] benefits," namely that the benefit to Montana consumers outweighs any purported burden on interstate commerce. Order, at 44-45. This Court credited TikTok's allegations that SB419 imposes a burden that outweighs the benefit. *See* ECF 12, at 23-24 (claiming that "non-Montanan TikTok users" will have to share "*more* data with TikTok"). As identified above, the State seeks information about TikTok's data privacy practices to provide the requisite "evidentiary support." Order, at 44-45. The State does not anticipate

seeking discovery related to the Commerce Clause claim beyond what the State disclosed above. *See supra* Section II.A.

## III.   The State Anticipates Expert Discovery.

As explained in the parties' joint discovery plan, the State anticipates there will be some role for experts in this litigation. Specifically, the State anticipates that likely areas of expert discovery will include technological issues related to how TikTok collects, stores, and accesses its users' data, and the feasibility of implementing SB419. As one example, the State anticipates deposing Steven Weber, a putative expert on TikTok's data polices and national security, who claims to know about industry standards. The State understands from Plaintiffs' position set forth in the Rule 26(f) joint discovery plan that Plaintiffs do not oppose expert discovery if this Court permits general fact discovery. *See* ECF 126, at 13 ("To the extent the Court decides to authorize further discovery at this juncture, Plaintiffs agree to a phase of expert discovery.").

## IV.   The State's Proposed Discovery Plan.

Based on the factual disputes raised above, and given that the State lacks access to this information except through the discovery process, dis

covery is appropriate. Fed. R. Civ. P. 26(b). The State proposes a consolidated limit of 35 interrogatories, including the interrogatories the State already served on TikTok,[4] and 12 fact depositions.

If the two cases were not consolidated, the State would be entitled to 20 fact depositions (10 depositions per case, *see* Fed. R. Civ. P. 30(a)(2)(A)(i)) and 50 interrogatories (25 interrogatories per case, *see* Fed. R. Civ. P. 33(a)(1)). While the consolidated nature of the case recognizes some overlapping legal issues, the two sets of plaintiffs present drastically different factual claims. The State's proposal of 35 interrogatories and 12 fact depositions balances the standard limits with the nature of two sets of plaintiffs—one being a large, international corporation that owns and operates the TikTok platform and the other being a group of individuals who use the platform and create content on the platform.

In addition, the State proposes no express limit of requests for production under Rule 34, requests for admission under Rule 36, or subpoenas of third parties under Rule 45. Rather, the limitations on each of

---

[4] The State agrees to counting those interrogatories against the 35-interrogatory limit proposed assuming the State retains the ability to meet and confer over TikTok's objections and prior responses. *See* ECF 126, at 16.

these discovery tools will follow from the Federal Rules of Civil Procedure and this Court's local rules, which already provide safeguards against unnecessary and burdensome discovery.

## CONCLUSION

For the foregoing reasons, the State is entitled specific discovery from the two sets of plaintiffs in this litigation, as well as limited discovery from ByteDance Ltd. The State reserves its right to seek discovery beyond the topics outlined above (1) to the extent discovery reveals new information; (2) in response to Plaintiffs' simultaneous filing regarding the discovery they seek; and (3) in response to any new arguments raised by Plaintiffs, particularly with respect to Individual Plaintiffs' Due Process claim and TikTok's Bill of Attainder claim, which have not been briefed at this stage of litigation.

DATED this 15th day of February 2024.

AUSTIN KNUDSEN
Montana Attorney General

*/s/ Christian B. Corrigan*
CHRISTIAN B. CORRIGAN
*Solicitor General*

PETER M. TORSTENSEN, JR.
 *Assistant Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
christian.corrigan@mt.gov
peter.torstensen@mt.gov

KATHLEEN L. SMITHGALL
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
katie@consovoymccarthy.com

Tyler Green*
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
Phone: 703-243-9423
tyler@consovoymccarthy.com
 *Admitted *pro hac vice*

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated:  February 15, 2024                        /s/ *Christian B. Corrigan*
                                                 CHRISTIAN B. CORRIGAN