IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAMANTHA ALARIO, et al., | Lead Case No. |
| Plaintiffs, | CV 23–56–M–DWM |
| and | |
| | Member Case No. |
| TIKTOK INC., | CV 23–61–M–DWM |
| Consolidated Plaintiff, | |
| | ORDER |
| vs. | |
| AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana, | |
| Defendant. | |

In this consolidated matter, the social media company TikTok Inc.

("TikTok") and a group of TikTok users ("User Plaintiffs"), (collectively

"Plaintiffs"), sued Montana's Attorney General (hereinafter referred to as the

"State") over the constitutionality of Montana Senate Bill 419 ("SB 419"), which

bans the download and use of TikTok in Montana.  On February 5, 2024, following

disagreements developing their joint discovery plan, (*see generally* Doc. 124), the

parties were ordered to "submit a detailed accounting of the individuals or entities

from which [they] seek[] to obtain discovery" and include an explanation of why that information is "necessary and pertinent" to the litigation. (Doc. 126 at 6–7.) Following their simultaneous submissions, the parties were each permitted to respond to the opposing party's proposed discovery. Ultimately, although neither party fully satisfied the Court's directive, they will both be permitted to engage in limited and targeted discovery as follows.[1]

## I.     Scope of Discovery

Plaintiffs maintain this case raises predominantly legal issues and argue that although further discovery is not necessary, if more discovery is warranted, it must be limited and targeted. (*See* Docs. 127, 129.) Specifically, Plaintiffs limit their discovery to inquiries regarding the evidence lawmakers considered in passing SB 419 and whether the State's consumer protection interest is pretextual. On the other hand, the State seeks broad discovery from Plaintiffs, as well as other known and unknown individuals and entities, as discussed in more detail below. (*See* Docs. 128, 130.)

---

[1] In addition to their discovery proposals, the parties trade accusations that the other attempted to skirt discovery rules during the preliminary injunction stage. The State alleges that TikTok raised evasive objections and produced insufficient responses to its previous discovery requests. Plaintiffs counter that the State has yet to articulate any precise concerns related to their discovery responses. As instructed in the Order requesting supplemental briefing on discovery, (*see* Doc. 126), this is not the place to hash out a discovery dispute, nor have the parties presented a record on which any determination over such a dispute can be made.

A.    **Plaintiffs' Discovery**

Plaintiffs submit a fairly detailed accounting of what they wish to discover, including information from the Montana Department of Justice about its own investigation into TikTok leading up to passage of SB 419 and about the State's purported consumer protection interest.  (*See* Doc. 127.)  Specifically, Plaintiffs seek discovery from the Montana Department of Justice, Attorney General Knudsen, and other identified individuals or entities, on the following topics:

- individuals and documents identified in the State's initial disclosures;

- discoverable information from disclosed expert witnesses;

- consumer complaints relating to TikTok;

- documents available to the State received from third parties in connection with its or other states' investigations of TikTok;

- information regarding individuals interviewed or deposed in connection with the State's investigation of TikTok;

- information considered by State officials in relation to specific public statements about TikTok;

- information reflecting research, testing, study, or analysis of TikTok;

- information reflecting any less-restrictive alternatives considered by the State in lieu of the complete ban of TikTok as codified in SB 419;

- the legislative record for SB 419;

- information regarding the nature of the perceived threat posed by China and TikTok;

- information showing the State intended to punish TikTok through enactment of SB 419;

- information relating to the spy balloon from on or around
  February 2023.

(*See id.* at 3–5.)  The State does not substantively counter these requests, other than

arguing that (1) Attorney General Knudsen cannot be deposed under the Ninth

Circuit's "apex" doctrine, and (2) because First Amendment analysis does "not

turn[] on the motives of the legislators, but [rather] on the effect of the

regulation[,]" *see City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984),

discovery into pretext and improper motive is unwarranted, as these facts, even if

true, would not change the analysis.

The State's first argument regarding the apex doctrine is persuasive and

discussed in detail below.  As to the State's second objection, the issue of pretext

aside, Plaintiffs explain in a footnote that proving improper motive is necessary

and pertinent to TikTok's Bill of Attainder claim.  TikTok has alleged that SB 419

is an unconstitutional bill of attainder because "[r]ather than regulate social media

companies more generally, the Ban banishes TikTok, and just TikTok, from the

State for purely punitive reasons, as evidenced by the State's decision to single out

[TikTok] for harsh penalties based on speculative concerns about TikTok's data

security and content moderation practices."  (Doc. 1 at ¶ 7(d), Cause No. CV 23–

61–M–DWM.)  Although this claim was not addressed at the preliminary

injunction stage, it has not been dismissed, and Plaintiffs are entitled to discovery

regarding "evidence permitting an inference of punitive intent."  *See Fowler*

*Packing Co., Inc. v. Lanier*, 844 F.3d 809, 818 (9th Cir. 2016). Plaintiffs' other

requests are necessary and pertinent to this litigation because the Attorney General

and other State officials repeatedly stated they relied on consumer complaints and

information gathered in the State's investigation of TikTok to justify SB 419 to

lawmakers and the public. Accordingly, Plaintiffs' request for discovery on the

topics listed above is permitted, so long as that discovery is otherwise consistent

with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1, 26(b)(1). For

example, Plaintiffs' request for "information" is far too broad and must be

narrowed to a requests for "material," "documentation," "testimony," or other such

specific terms related to Plaintiffs' stated topics.

## B.     The State's Discovery

Regarding User Plaintiffs' First Amendment, Due Process, and Commerce

Clause claims, the State proposes discovery from each of the User Plaintiffs

about "their use of TikTok, the content they create on TikTok, income earned on

TikTok, and the availability of other social media or online platforms to produce,

distribute, or monetize their content," including "facts about how SB 419

imposes a burden . . . on 'the flow of online service across state lines.'" (Doc.

128 at 6, 8 (quoting Doc. 1 at ¶ 112)[2].) As the State has not yet served any

---

[2] Going forward, the State should note that record citations must be to the docket
number in the lead case, *Alario et al. v. Knudsen*, No. CV 23–56–M–DWM, not
the member case, *TikTok Inc. v. Knudsen*, No. CV 23–61–M–DWM.

discovery on User Plaintiffs, these requests seem necessary and appear pertinent to the litigation.

As to TikTok's First Amendment claim, the State seeks two broad categories of information: (1) "from ByteDance Ltd. and TikTok about ByteDance's subsidiaries and the data-sharing and data-access agreements among the subsidiaries, including TikTok"; and (2) "from TikTok about its beneficial owners and TikTok's [current and former] data-gathering, data-storage, data-security, and data-access processes and procedures," including historical data, which the State argues is necessary because "TikTok has not been forthcoming about when it intends to dispose of or protect already-collected data from users and creators." (*Id.* at 10, 13.)  Relatedly, the State seeks information from TikTok about its "use of user and creator data, including how it recommends content through its algorithm" and about "how TikTok determines what is 'age appropriate' and what data it collects, maintains, and uses to make recommendations for content."  (*Id.* at 16.)  The State seeks to depose Blake Chandlee, President of Global Business Solutions for TikTok, and "a TikTok representative who has knowledge about TikTok's data privacy practices and policies," among others that the State has yet to name.  (*Id.* at 17.)

As to Plaintiffs' conflict preemption claim, "[t]he State seeks information from TikTok about the ongoing investigation with [the Committee on Foreign

Investment in the United States]," including about "the scope of the investigation[,] . . . whether the ongoing investigation extends beyond ByteDance and Music.ly[,] . . . whether data privacy is at issue in that investigation[,] and information about what protective measures TikTok has taken in direct response to th[o]se negotiations." (*Id.* at 20.) The State argues that "[b]ecause conflict preemption claims fail unless they involve an actual conflict . . . the State is entitled to discovery to show that no such conflict exists." (*Id.* at 20–21.)

In response to the State's proposal, Plaintiffs maintain the State's broad requests fail to justify further discovery at all, especially in light of the State's prior discovery requests served on TikTok, which overlap significantly with its current proposal. Plaintiffs further argue that the State's proposal provides "*exactly* the same level of generality with which the State described its requested discovery in the January 16, 2024 Joint Discovery Plan." (Doc. 129 at 8.) While Plaintiffs' assessment is fairly accurate, the State has established that some additional discovery is warranted, so limited discovery will be allowed.

Plaintiffs argue any additional discovery by the State should be limited to:

- [User] Plaintiffs' use of TikTok and other platforms (including depositions of [User] Plaintiffs);

- TikTok Inc.'s current U.S. policies and procedures relating to minor safety and the protection of U.S. user data (including a deposition of Blake Chandlee); and

- expert discovery as previously agreed by the parties.[3]

(Doc. 129 at 13.)  These topics are reasonable given their narrow scope and the State's agreement.

But while the above list covers the breadth of the State's requests regarding User Plaintiffs' claims, it is far from comprehensive as it relates to the State's proposed discovery on TikTok, and some additional discovery is warranted to establish whether the State's "recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994).  Accordingly, targeted discovery related to the following topics is also allowed:

- recent data-sharing and data-access agreements between ByteDance Ltd. and TikTok;

- TikTok's current U.S. data-gathering, data-storage, data-security, and data-access policies and procedures, including TikTok's internal controls to ensure compliance with and enforcement of these policies and procedures; and

- TikTok's involvement with the ongoing investigation by the Committee on Foreign Investment in the United States, including whether data privacy is at issue and what protective measures TikTok has taken in direct response to those negotiations.

---

[3] The State anticipates expert discovery on technological issues; for example, how TikTok collects, stores, and accesses its users' data, and the feasibility of implementing SB 419.  Because the Court is authorizing further discovery, Plaintiffs do not oppose expert discovery.  Therefore, expert discovery, specifically the depositions of Steven Weber and Karen Sprenger, will be allowed.

Discovery requests must not be unreasonably cumulative or duplicative.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

The State's requests for discovery related to past agreements between ByteDance and TikTok, or ByteDance and its other subsidiaries, as well as TikTok's historical data-related processes and procedures, are outside the scope of this litigation.  Nothing in SB 419 aims to regulate other ByteDance subsidiaries or historical user data collected by TikTok.  As Plaintiffs point out, historical data cannot justify a forward-looking restraint on speech.  *See Edwards v. Dist. of Columbia*, 755 F.3d 996, 1004 (D.C. Cir. 2014) ("Current burdens demand contemporary evidence.").  Furthermore, in light of the State's insistence that SB 419 only regulates content-neutral expressive conduct, (*see* Doc. 51 at 23), information related to TikTok's algorithm, including any policies or procedures related to its determination of "age appropriate" content and the data it collects, maintains, and uses to make recommendations for content, is neither necessary nor pertinent to the State's case.

### C.    Apex Depositions

The State focuses its response brief on the Ninth Circuit's "apex doctrine," which limits depositions of high-ranking political officials (also known as "apex" depositions) in civil cases unless "extraordinary circumstances" exist.  *See In re U.S. Dept. of Ed.*, 25 F.4th 692, 695 (9th Cir. 2022); *Voelker v. BNSF Ry. Co.*,

9

2019 WL 6910167, at *1 (D. Mont. Dec. 19, 2019) ("Apex depositions present a substantial risk of 'annoyance, embarrassment, oppression, or undue burden or expense,' and they are unlikely to elicit relevant testimony, even under the broad standard of relevance that applies for purposes of discovery.") (citing Fed. R. Civ. P 26(b)(1), (c)(1)). Here, the State insists the apex doctrine bars any deposition of Defendant Attorney General Knudsen because Plaintiffs fail to establish such circumstances. But, while Knudsen presents a starkly different factual claim that undermines the apex reasoning, his deposition at this point will be disallowed. Knudsen has a vast record of public statements that cabin his views and reasoning for the TikTok legislation.

For "exceptional circumstances" to exist, the party seeking the deposition must establish: "(1) a showing of agency bad faith; (2) the information sought from the [high-ranking political official] is essential to the case; and (3) the information sought [] cannot be obtained in any other way." *Dept. of Ed.*, 25 F.4th at 702. State executive officials are not mentioned in *Department of Education*, nor is there any discussion of how, or if, the holding implicates separation of powers concerns at the state level in federal court. However, the Ninth Circuit recently approved a district court's application of the *Department of Education* test in the state context. *See In re Oregon*, 2024 WL 94304, at *1 (9th Cir. Jan. 9, 2024) (unpublished). Thus, it is appropriate to apply that test here.

10

Plaintiffs have not demonstrated extraordinary circumstances under *Department of Education*.  First, although Attorney General Knudsen was not shy in his press tour touting the dire need for this bill, Plaintiffs have not provided any evidence he acted in bad faith.  Further, Plaintiffs have not demonstrated that deposing Attorney General Knudsen is necessary, or why the information they seek could not be obtained another way, such as from other Department of Justice employees or through other discovery tools.  Attorney General Knudsen cannot be deposed at this time.  He is subject to providing responses to reasonable requests for admission and interrogatories.[4]

## II.   Discovery Limits

The State proposes the following limits on discovery: (1) 35 interrogatories, including the interrogatories already served on Plaintiffs; (2) 12 fact depositions; and (3) no limit to requests for production under Rule 34, requests for admission under Rule 36, or subpoenas of third parties under Rule 45.  (*See* Doc. 128 at 22–24.)  Plaintiffs proposed the following discovery for each party in their preliminary pretrial discovery submission and do not supplement the limitations in their

---

[4] It appears the State has abandoned its request to depose TikTok Inc.'s CEO, Shou Zi Chew.  (*Compare* Doc. 125 at 14, *with* Doc. 128.)  As Plaintiffs point out, this would also likely be an improper apex deposition under the Ninth Circuit's test.  (*See* Doc. 129 at 12, n.3.)

subsequent briefing: (1) 20 interrogatories, (2) 10 requests for production, (3) 10 requests for admission, and (4) five fact depositions.  (Doc. 124 at 15.)

The State's request for 12 depositions and 35 interrogatories is excessive; particularly because the State has neglected to provide any details about who they intend to depose beyond the named plaintiffs, two experts, and one other individual.  Because neither party has demonstrated any reason that compels a change to the limitations imposed by Federal Rules of Civil Procedure 30 and 33, the parties are each limited to 10 depositions and 25 written interrogatories, including those already served on Plaintiffs.  Requests for admission and production are not limited by rule, but consistent with Rule 26(b)(1), all such requests must be proportional and reasonably related to the legal and factual issues in the case.  *See also* Fed. R. Civ. P. 1 (requiring that the rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## III.  Conclusion

Accordingly, IT IS ORDERED that the parties shall be permitted to conduct discovery consistent with this Order.  A trial schedule shall be set by separate order.

IT IS FURTHER ORDERED that any further discovery disputes must be raised in a motion to compel under Rule 37.[5]  Prior to filing such a motion, counsel must advise the client that the loser will pay the opposing party's associated fees and costs.  *See* Fed. R. Civ. P. 37(a)(5).  Counsel must certify its compliance with this requirement in the motion.  In addition, at the time the motion is fully-briefed, both parties must file affidavits detailing their known fees and costs associated with the motion.

DATED this _____ day of April, 2024.

15:13 P.M.

Donald W. Molloy, District Judge
United States District Court

---

[5] The parties are reminded of the adage that "every road has its turn," meaning that the failure to acquiesce to reasonable requests by the other party will likely be reciprocated.  Discovery disputes will be resolved only on motions to compel and the losing party will be required to pay the prevailing party's attorney fees and costs.